FILED
United States Court of Appeals
Tenth Circuit

**April 2, 2012**

**Elisabeth A. Shumaker**
**Clerk of Court**

PUBLISH

# UNITED STATES COURT OF APPEALS

## FOR THE TENTH CIRCUIT

---

JANOS TOEVS,

    Plaintiff - Appellant,

v.

LARRY REID; SUSAN JONES; CASE
MANAGER J. GLIDEWELL; CASE
MANAGER KRISTY MOORE,

    Defendants - Appellees.


UNITED STATES OF AMERICA,

    Amicus Curiae,

AMERICAN CIVIL LIBERTIES
UNION; AMERICAN CIVIL
LIBERTIES UNION FOUNDATION OF
COLORADO,

    Movants.

No. 10-1535
(D.C. No. 1:06-CV-01620-CBS-KMT)

---

**ORDER**

---

Before **MATHESON**, **McKAY**, and **EBEL**, Circuit Judges.

---

This matter is before the court on the *Appellees' Amended Petition For Panel*

*Rehearing Or Rehearing En Banc.* We also have a brief in support of that petition from the United States, a response from appellant Janos Toevs, a supplement to Mr. Toevs' response, and a response from the American Civil Liberties Union. Finally, we also note receipt of the appellees' response to the ACLU brief and the ACLU's supplemental authority.

Upon consideration of all the materials on file, we grant panel rehearing and direct the clerk to issue the amended opinion attached to this order. The new decision will be filed as of today's date.

The suggestion for en banc review was circulated to all the judges of the court who are in regular active service. A poll was called, but later was withdrawn following panel rehearing. In light of that withdrawal, there was no final vote with regard to the en banc request. Accordingly, the en banc suggestion is denied. *See* Fed. R. App. P. 35(a)(noting a majority of the active judges who are in regular service may order en banc rehearing); *see also* 10th Cir. R. 35.5 (regarding voting on en banc rehearing).

Entered for the Court

ELISABETH A. SHUMAKER
Clerk of Court

2

**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**April 2, 2012**

**Elisabeth A. Shumaker**
**Clerk of Court**

PUBLISH

# UNITED STATES COURT OF APPEALS

## TENTH CIRCUIT

JANOS TOEVS,

      Plaintiff-Appellant,

v.

No. 10-1535

LARRY REID; SUSAN JONES; CASE
MANAGER J. GLIDEWELL; CASE
MANAGER KRISTI MOORE,

      Defendants-Appellees.

### APPEAL FROM THE UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF COLORADO
### (D.C. No. 1:06-CV-01620-CBS-KMT)

Submitted on the briefs:[*]

Janos Toevs, Plaintiff-Appellant, Pro se.

Andrew M. Katarikawe, Senior Assistant Attorney General, Civil Litigation and
Employment Law Section, John W. Suthers, Attorney General, Denver, Colorado for
Defendants-Appellees.

---

[*]    After examining the briefs and appellate record, this panel has determined
unanimously that oral argument would not materially assist the determination of this
appeal.  *See* Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G).  The case is therefore ordered
submitted without oral argument.

Before **MATHESON**, **McKAY**, and **EBEL**, Circuit Judges.

_____

**EBEL**, Circuit Judge.

_____

Janos Toevs, proceeding pro se, appeals the district court's grant of summary judgment to defendants in his 42 U.S.C. § 1983 civil-rights suit. Mr. Toevs argues that the court erred in granting qualified immunity to defendants on his claim that they denied him meaningful periodic reviews during his lengthy confinement in administrative segregation. Exercising jurisdiction under 28 U.S.C. § 1291, we affirm, although on different grounds than the district court.

The district court concluded that Mr. Toevs failed to demonstrate that defendants violated his constitutional rights. We disagree. Based on the record and the arguments before this court, Mr. Toevs was entitled to meaningful periodic reviews during his placement in administrative segregation in the Colorado prison system's Quality of Life Level Program (QLLP) because the exclusive justification for keeping Mr. Toevs in administrative segregation was to influence him to modify his future behavior. However, the record at this state of the proceeding does not establish that Mr. Toevs was given meaningful reviews and Mr. Toevs denies receiving any such reviews. If this were the end of the analysis we would have to conclude that summary judgment for defendants on the merits was improper and we would have to remand for further consideration by the district court of the reviews given to Mr. Toevs, including the penological interests of the prison in this process. On the merits, it was certainly error to grant summary judgment to

-2-

defendants on this issue.   Nevertheless, because at the time it was not clearly established that the review process should apply throughout each level of the QLLP and that the perfunctory reviews given to Mr. Toevs at Levels 1-3 and the failure to provide any reviews whatsoever at Levels 4-6 would not be considered meaningful given the rehabilitative justification for this segregation program, we conclude that defendants are entitled to qualified immunity.  Accordingly, instead of remanding for further proceedings, we are able to affirm summary judgment for the defendants upon this alternative ground.

The administrative segregation placement in this case involves a prisoner in a Colorado stratified incentive program with the sole stated purpose of encouraging him to improve his future behavior.  Therefore, this case addresses, exclusively, the standards for periodic reviews during placement in this program.

## I.    BACKGROUND

The QLLP is described in Operational Memorandum (OM) 650-100.  The program, which is employed at Colorado State Penitentiary (CSP) and Centennial Correctional Facility (CCF), is "a stratified quality of life program based on increased levels of privileges for demonstrated appropriate offender behavior and program compliance."  OM 650-100 § I, R. at 610.  The program consists of six levels.[1]  Level 1

---

[1]     After the panel issued its original opinion in this case, in seeking rehearing defendants suggested that the case was moot because the structure of the QLLP had changed.  But it is defendants' burden to "com[e] forward with the subsequent events" that allegedly have resulted in mootness, *Greater Yellowstone Coalition v. Tidwell*, 572

has the most restrictive conditions, and each successive level offers the inmate more privileges.

Levels 1 through 3 are classified as administrative segregation. Accordingly, they are subject to the provisions of Administrative Regulation (AR) 600-02, which governs placement in administrative segregation. AR 600-02 provides for periodic reviews of segregation status. Levels 4 through 6 are classified as close custody. AR 600-02 does not cover these levels, and defendants concede that there is no review process applicable to them. After completing QLLP Level 6, an inmate is eligible to be transferred to the general prison population. If an inmate spends the minimum amount of time at each level, he will be in the QLLP for thirteen months and seven days. There is no maximum amount of time for placement in the QLLP.

Mr. Toevs was placed in the QLLP on March 4, 2002, after attempting to escape. By September 2005, he had reached Level 6, but due to poor behavior he was regressed to Level 1. He again began to progress through the program, achieving Level 1 on October 7, 2005; Level 2 on October 13, 2005; Level 3 in either December 2005 or January 2006; and Level 4 on October 15, 2007. On January 31, 2009, Mr. Toevs completed Level 6

---

F.3d 1115, 1121 (10th Cir. 2009) (quotation omitted), and defendants' vague suggestions of changes to the QLLP fail to carry that burden. Further, it appears that a suggestion of mootness made in connection with seeking rehearing may come too late. *See Cardinal Chem. Co. v. Morton Int'l, Inc.*, 508 U.S. 83, 98 (1993) ("If, *before the court had decided the case*, either party had advised it of a material change in circumstances that entirely terminated the party's controversy, it would have been proper either to dismiss the appeal or to vacate the entire judgment of the District Court." (emphasis added)). Furthermore, Mr. Toevs is seeking damages, which would not be mooted in any event.

and graduated from the QLLP. In March 2009, he rejoined the general prison population.

In the relevant pleading, the Third Amended Complaint, Mr. Toevs complained that during his placement in the QLLP from 2005 to 2009 he was deprived of a liberty interest without due process.[2] Specifically, he alleged that Jean Glidewell (his case manager from September 2005 to February 2006) and Kristi Moore (his case manager from March to June 2006) denied him his right to a meaningful periodic review of his confinement in administrative segregation because the reviews they gave him were perfunctory, meaningless, and all said the same thing. With regard to Larry Reid (the warden at CSP/CCF from September 1, 2002, until October 1, 2007) and Susan Jones (Mr. Reid's successor as CSP/CCF warden), he alleged that OM 650-100 rendered any reviews meaningless because they could not result in his immediate release from the QLLP. And finally, he complained that OM 650-100 did not provide for reviews when he was in QLLP Levels 4 through 6 in February to September 2005 and October 2007 to January 2009. All of his claims were asserted against defendants in their individual capacities. He requested compensatory and punitive damages and declaratory relief.

The parties consented to have the case heard by a magistrate judge. *See* 28 U.S.C. § 636(c). In evaluating the parties' cross-motions for summary judgment, the district court held defendants were entitled to qualified immunity. It held that the review process

---

[2] Although Mr. Toevs initially was placed in the QLLP in March 2002, the district court held that any claims for periods before August 2004 were barred by the applicable statute of limitations. Thus, the Third Amended Complaint focused on events from 2005 to 2009. Mr. Toevs does not appeal this ruling.

was constitutionally adequate, and thus Mr. Toevs had failed to establish that Ms. Glidewell and Ms. Moore deprived him of a constitutional right. It also held that there was no showing of Mr. Reid's and Ms. Jones's personal participation in the alleged constitutional violations; there was no evidence that they participated in any of the reviews or that they had any knowledge of his circumstances. Therefore, the court concluded that Mr. Toevs failed to establish that Mr. Reid and Ms. Jones deprived him of a constitutional right. The court further determined that the allegations that OM 650-100 mooted any protections provided by AR 600-02 were conclusory. And, the court concluded, its decision that the reviews were constitutionally adequate rebutted Mr. Toevs's argument that, because they could not have secured his immediate release from the QLLP, the reviews were meaningless.[3] Mr. Toevs appeals.

## II.    ANALYSIS

Mr. Toevs argues that the district court failed to give his filings the liberal construction due a pro se litigant. He believes the court missed the focal points of his argument:  (1) that his extended placement in the QLLP violated his right to due process because at Levels 1 through 3 he did not receive any *meaningful* reviews, which he expresses as reviews that could result in his immediate release to the general population;

---

[3]    The district court concluded that it need not consider defendants' argument that Mr. Toevs had failed to exhaust his administrative remedies. It further stated that, if it were to consider the issue, there may be a genuine issue of material fact as to whether there was an administrative appeal process available to Mr. Toevs. Defendants do not argue the lack of administrative exhaustion on appeal, so we do not consider the issue.

and (2) at Levels 4 through 6 he did not receive any reviews at all. In part, he attributes the court's errors to its denial of his requests for appointed counsel. Without counsel, he asserts, he was unable to frame his arguments or conduct discovery effectively.

## A. Standard of Review and Qualified Immunity

We review the district court's grant of summary judgment de novo. *See Steffey v. Orman*, 461 F.3d 1218, 1221 (10th Cir. 2006). Because judgment in this case was based on qualified immunity, however, "the summary judgment standards are subject to a somewhat different analysis from other summary judgment rulings." *Id.* "The doctrine of qualified immunity shields government officials performing discretionary functions from liability for damages 'insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Boles v. Neet*, 486 F.3d 1177, 1180 (10th Cir. 2007) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)).

Thus, to avoid judgment for the defendant based on qualified immunity, "the plaintiff must show that the defendant's actions violated a specific statutory or constitutional right, and that the constitutional or statutory rights the defendant allegedly violated were clearly established at the time of the conduct at issue." *Steffey*, 461 F.3d at 1221 (quotation omitted); *Pearson v. Callahan*, 555 U.S. 223, 129 S. Ct. 808, 815-16 (2009). We view the facts in the light most favorable to the plaintiff, Mr. Toevs. *See Kirkland v. St. Vrain Valley Sch. Dist. No. Re-1J*, 464 F.3d 1182, 1188 (10th Cir. 2006).

We have discretion to address the two qualified-immunity prongs in whatever

order is appropriate under the circumstances.  *Pearson*, 129 S. Ct. at 818; *see also*

*Ashcroft v. al-Kidd*, 131 S. Ct. 2074, 2080 (2011).  We recognize that "a court can often

avoid ruling on the plaintiff's claim that a particular right exists.  If prior case law has not

clearly settled the right, and so given officials fair notice of it, the court can simply

dismiss the claim for monetary damages."  *Camreta v. Greene*, 131 S. Ct. 2020, 2031

(2011).  "And indeed, our usual adjudicatory rules suggest that a court *should* forbear

resolving this issue."  *Id.*; *see also Kerns v. Bader*, 663 F.3d 1173, 1180-81 (10th Cir.

2011).  But "avoid[ing] avoidance" remains within this court's discretion.  *Camreta*, 131

S. Ct. at 2031-32; *Kerns*, 663 F.3d at 1181.  This is because "our regular policy of

avoidance sometimes does not fit the qualified immunity situation because it threatens to

leave standards of official conduct permanently in limbo."  *Camreta*, 131 S. Ct. at 2031.

"Qualified immunity thus may frustrate the development of constitutional precedent and

the promotion of law-abiding behavior."  *Id.*  While "[i]n general, courts should think

hard, and then think hard again, before turning small cases into large ones[,] . . . it

remains true that following the two-step sequence—defining constitutional rights and

only then conferring immunity—is sometimes beneficial to clarify the legal standards

governing public officials."  *Id.* at 2032.

This is one of those cases in which it is appropriate for the court to exercise its

discretion to avoid avoidance.  As shown by Mr. Toevs's seven-year placement in the

QLLP, prison officials' actions here are of a longstanding nature.[4] The officials' conduct significantly affected this prisoner. And as discussed below, the law in this area is ill-defined. We undertake this analysis, however, with full recognition that "[w]e must accord substantial deference to the professional judgment of prison administrators, who bear a significant responsibility for defining the legitimate goals of a corrections system and for determining the most appropriate means to accomplish them." *Overton v. Bazzetta*, 539 U.S. 126, 132 (2003); *see also Beard v. Banks*, 548 U.S. 521, 528, 530 (2006). And as stated earlier, but for the fact that ultimately we do award summary judgment to the defendants here, we would have remanded to give the defendants a further opportunity to advance a penological justification for their conduct vis-a-vis Mr. Toevs.

## B. Due Process Claim

### 1. Violation of a Constitutional Right

Accordingly, we turn first to the question of whether defendants violated a specific constitutional right. Mr. Toevs alleges a violation of his right to due process.

#### a. Existence of a Liberty Interest

The first issue in the due-process context is whether the plaintiff has established a

---

[4]    In briefs related to the rehearing petition, Mr. Toevs noted that he had been placed in the QLLP on a previous occasion, and during that placement he also had been given reviews (including by one of the defendants in this case) that failed to give him guidance on how to progress through the program. Thus, it is apparent that officials' conduct goes back even further than the beginning of the QLLP placement at issue here.

-9-

protected interest (in this case a liberty interest). *See Steffey*, 461 F.3d at 1221; *Kirkland*, 464 F.3d at 1189. Subject to the qualifications in *Sandin v. Conner* discussed below, the Due Process Clause "itself does not give rise to a liberty interest in avoiding transfer to more adverse conditions of confinement." *Wilkinson v. Austin*, 545 U.S. 209, 221 (2005). In the prison context, state regulations can create protected liberty interests, but such interests are "generally limited to freedom from restraint which, while not exceeding the sentence in such an unexpected manner as to give rise to protection by the Due Process Clause of its own force, nonetheless imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Sandin v. Conner*, 515 U.S. 472, 484 (1995) (citations omitted). The district court "determined that because Mr. Toevs alleged placement in the QLLP for a lengthy period of time without meaningful periodic reviews, he may state a claim for atypical and significant restraint deserving due process protections." *Toevs v. Reid*, No. 06-cv-01620-CBS-KMT, 2010 WL 4388191, at *5 (D. Colo. Oct. 28, 2010).

This case comes to us on summary judgment, and therefore we have to view the evidence in the light most favorable to Mr. Toevs. He has provided allegations and evidence that his conditions of confinement largely track those conditions described in *Wilkinson*, which the Court determined were atypical. 545 U.S. at 214, 223-24. But we need not decide whether Mr. Toevs actually has established a liberty interest because, on appeal, defendants do not challenge the district court's conclusion that Mr. Toevs showed, for purposes of defeating summary judgment, that the conditions of his

-10-

confinement in the QLLP was an atypical and significant hardship.[5] Arguments not

clearly made in a party's opening brief are deemed waived. *See Tran v. Trs. of State*

*Colls. in Colo.*, 355 F.3d 1263, 1266 (10th Cir. 2004); *Adler v. Wal-Mart Stores, Inc.*, 144

F.3d 664, 679 (10th Cir. 1998). This court has not hesitated to apply this waiver rule to

prisoner litigants, *see Reedy v. Werholtz*, 660 F.3d 1270, 1274-75 (10th Cir. 2011), even

to prisoners who proceed pro se and therefore are entitled to liberal construction of their

filings, *see United States v. Clingman*, 288 F.3d 1183, 1187 (10th Cir. 2002). It is

appropriate to apply the rule equally to government defendants here, who are represented

by government counsel. Thus, we assume that Mr. Toevs has established a liberty

interest for purposes of defeating summary judgment against him on that point.[6]

### b.  Adequacy of Process Afforded Mr. Toevs

#### 1.  Mr. Toevs had a right to meaningful periodic review while he was confined to the QLLP.

The next issue focuses on the process that was afforded to Mr. Toevs. *See*

*Wilkinson*, 545 U.S. at 224; *Kirkland*, 464 F.3d at 1189. He does not contest the

---

[5]    The original panel opinion similarly stated that the defendants failed to challenge the district court's conclusion of atypical-and-significant conditions, and defendants' petition for rehearing does not take issue with this portion of the original opinion.

[6]    The conditions described by Mr. Toevs, if proven at trial, might or might not establish a liberty interest. Any such determination, however, would require a remand for further proceedings. Our conclusion that defendants are entitled to judgment on the "clearly established" portion of the qualified-immunity test obviates any need to remand this case. But we do not intend that this opinion add anything to the liberty-interest analysis set forth in *Wilkinson* and *Sandin*.

-11-

adequacy of the process by which he initially was committed to the QLLP or by which he was regressed to Level 1 in September 2005. Therefore, these are not issues in this appeal. Rather, Mr. Toevs argues only that while he was in the QLLP from 2005 to 2009, he was denied his right to a meaningful periodic review of his status.

The periodic-review requirement stems from *Hewitt v. Helms*, 459 U.S. 460 (1983), *abrogated in part on other grounds by Sandin*, 515 U.S. at 483. In *Hewitt*, the Supreme Court stated, "administrative segregation may not be used as a pretext for indefinite confinement of an inmate. Prison officials must engage in some sort of periodic review of the confinement of such inmates." *Id.* at 477 n.9. The review need not be extensive, as the Court continued:

> This review will not necessarily require that prison officials permit the submission of any additional evidence or statements. The decision whether a prisoner remains a security risk will be based on facts relating to a particular prisoner—which will have been ascertained when determining to confine the inmate to administrative segregation—and on the officials' general knowledge of prison conditions and tensions, which are singularly unsuited for "proof" in any highly structured manner.

*Id.* But the review must be meaningful; it cannot be a sham or a pretext. *See id.*; *Sourbeer v. Robinson*, 791 F.2d 1094, 1101 (3d Cir. 1986); *McClary v. Coughlin*, 87 F. Supp. 2d 205, 214 (W.D.N.Y. 2000).

Mr. Toevs contends that a meaningful review must be one that can result in his immediate release from the QLLP to the general population. In light of the circumstances presented here, we disagree. The cases to which Mr. Toevs refers to form his definition of a meaningful review did not involve prisoners who were in stratified incentive

-12-

programs such as the QLLP. *See Mackey v. Dyke*, 29 F.3d 1086 (6th Cir. 1994); *Kelly v. Brewer*, 525 F.2d 394 (8th Cir. 1975). In those cases, there were only two choices; either the prisoner should be in administrative segregation or he should be in the general population. Naturally, then, in that context, the courts referred to a review that was capable of releasing the inmate immediately into the general population. But here there were six levels within the QLLP, and Mr. Toevs had no right to rejoin the general population before he completed all six levels. Therefore, he did not have a right to an interim review capable of prematurely terminating his participation in the QLLP at any time before the completion of the sixth level.

But Mr. Toevs also complained that his progression reviews were perfunctory and repetitive, and defendants have countered that their review process was meaningful. Liberally construed,[7] Mr. Toevs's arguments for a prompt return to the general population imply and subsume the predicate form of relief that he be given a fair opportunity to progress through the program, which could ultimately lead to his return to the general prison population. Accordingly, it is appropriate for us further to consider the requirements for a "meaningful" review in these particular circumstances.[8]

_____

[7]    Because Mr. Toevs proceeds pro se, he is entitled to a liberal construction of his filings. *See Haines v. Kerner*, 404 U.S. 519, 520-21 (1972) (per curiam).

[8]    We are aware that prison officials face myriad difficulties in administering prison programs. *Cf. O'Lone v. Estate of Shabazz*, 482 U.S. 342, 349 (1987) (requiring courts to afford prison administrators appropriate deference, as they "are actually charged with and trained in the running of the particular institution under examination" (quotation omitted)); *Steffey*, 461 F.3d at 1222 ("Substantial deference is given to the professional judgment of prison administrators because they have 'significant responsibility for

-13-

"Unlike punitive segregation, including punitive isolation which is imposed by way of punishment for past misconduct, administrative segregation is not punitive and it looks to the present and the future rather than to the past." *Kelly*, 525 F.2d at 399. Thus, a "meaningful" review for a prisoner in a behavior-modification program is one that evaluates the prisoner's current circumstances and future prospects, and, considering the reason(s) for his confinement to the program, determines whether that placement remains warranted. In the context of a stratified incentive program such as the QLLP, the review would consider whether the prisoner is eligible to move to the next level or, if the prisoner already is at the highest level, whether he or she is eligible to graduate from the program.

Further, "what would be required for an intelligent and meaningful review of the case of one inmate might not be required in the case of another." *Id.* at 400. Where, as here, the goal of the placement is solely and exclusively to encourage a prisoner to

defining the legitimate goals of [the prison] and for determining the most appropriate means to accomplish them.'" (quoting *Overton*, 539 U.S. at 132)). As stated, on the summary judgment record before us, this case involves (1) administrative confinement (not punitive confinement); (2) for extensive periods of time where the State has conceded that confinement was atypical; (3) where the sole justification is behavior modification (not punitive segregation, nor segregation based on safety, prison administration, the nature of the underlying crime, or other objectives); and (4) the prisoner is substantially delayed (here, confined for seven years) in progressing through the system without any meaningful review. Thus, contrary to defendants' arguments for rehearing, this opinion does not address situations such as placing an inmate in administrative segregation because his conviction is for raping a child, because he is a former law enforcement officer, or because he has raped or murdered other inmates and therefore presents a risk to the safety of the institution.

-14-

improve his future behavior, the review should provide a statement of reasons, which will often serve as a guide for future behavior (i.e., by giving the prisoner some idea of how he might progress toward a more favorable placement).  *See Wilkinson*, 545 U.S. at 226 (noting that Ohio's requirement of a statement of reasons "serves as a guide for future behavior"); *Greenholtz v. Inmates of Neb. Penal and Corr. Complex*, 442 U.S. 1, 15 (1979) (noting that prisoners denied parole were told the reason "as a guide to the inmate for his future behavior").

In *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976), the Supreme Court instructed the lower courts to examine "the probable value, if any, of additional or substitute procedural safeguards" and "the fiscal and administrative burdens [on the government] that the additional or substitute procedural requirement would entail."  The value of the QLLP program is high, in that it promotes the ultimate stated goal of behavior modification.  Moreover, the administrative burden on the government should be relatively low, as the QLLP already requires officials to track prisoners' progress and evaluate their prospects for promotion to the next level.

A meaningful review, however, does not require giving the inmate an opportunity to submit additional evidence.  *See Hewitt*, 459 U.S. at 477 n.9.  And if the relevant circumstances truly have not changed, that can easily be stated, rather than just relying on a meaningless, repetitive, and rote response.  *See Edmonson v. Coughlin*, 21 F. Supp. 2d

242, 253 (W.D.N.Y. 1998).[9]

The circumstances of this case are somewhat akin to civil contempt. "In civil contempt, the contemnor is able to purge the contempt and obtain his release by committing an affirmative act, and thus carries the keys of his prison in his own pocket." *Lucre Mgm't Group, LLC v. Schempp Real Estate, LLC (In re Lucre Mgm't Group, LLC)*, 365 F.3d 874, 876 (10th Cir. 2004) (quotation omitted). Similarly, the QLLP is intended to provide the prisoner the incentive to make better choices and earn his eventual release to the general population, putting the ability to move back into the general population ultimately within the prisoner's own hands, although of course not until he has completed the six steps set out in the QLLP. But to provide an adequate ground for civil contempt, a court order must be specific and definite. *See id.* at 875; *see also Int'l Longshoremen's Ass'n, Local 1291 v. Philadelphia Marine Trade Ass'n*, 389 U.S. 64, 76 (1967) ("The most fundamental postulates of our legal order forbid the imposition of a penalty for disobeying a command that defies comprehension."). A complete failure to explain the prisoner's progress is like issuing a vague or ambiguous contempt order; one supposedly has the keys to one's release, but one has no idea what they are.

We are neither mandating the implementation of a stratified behavior-modification

---

[9]     While the petitions for rehearing were pending in this case, *Rezaq v. Nalley*, No. 11-1069, was argued before the court. In *Rezaq*, the district court held that a prisoner had no liberty interest in avoiding placement in the United States Penitentiary Administrative Maximum Facility (ADX). This decision expresses no opinion regarding *Rezaq* and does not address the issue presented for review in that case.

-16-

program nor imposing any particular structure on any such program. We simply hold that, if a prison system wishes to encourage better behavior by implementing a stratified incentive program that involves an atypical and significant hardship, it must provide meaningful individualized reviews to prisoners to help them progress through the program.

### 2. Mr. Toevs did not receive meaningful periodic reviews between 2005 and 2009.

### A. Levels 1 through 3

Having determined the requirements for a meaningful periodic review, we must determine whether the reviews given to Mr. Toevs at Levels 1, 2, and 3 starting in 2005 meet this standard. As Mr. Toevs complains, most of his review forms largely contain the same information, with occasional updates. But defendants contend that the review forms reflect only part of the review process.

Ms. Moore and Ms. Glidewell submitted affidavits stating that "[a]n inmate's periodic review is recorded on a form prescribed by AR 600-02. The contents of this form do not reflect all factors considered in the inmate's review, but only document significant benchmarks in the inmate's progress through the QLLP." R. at 607; 649.[10]

> Inmates' periodic reviews are initiated by case managers, and consist of a review of information obtained from the case manager's contacts with the inmate during the review period, a review of Chronlog reports, chrons entered by housing staff, and incident reports, if any. The reviews also

---

[10]    Defendants initially submitted an unsigned affidavit for Ms. Glidewell, but later submitted a signed version.

consider whether the reasons for the inmate's initial placement in administrative segregation still exist. If the case manager determines from a review that the inmate has met all expectations, he or she recommends a progression to the next level in the QLLP. If not, he or she recommends no change.

*Id.* at 608; *see also id.* at 650.

However, the evidence in this record does not indicate that Mr. Toevs received meaningful reviews. For example, he spent twenty-one months at Level 3 (eighteen more than the minimum) before being promoted to Level 4. The QLLP specifies certain prerequisites for promotion to Level 4. During this time, however, his review forms never stated why he was being held at Level 3. While certain classes were recommended, there was no indication that they had to be completed before progression (and in fact, Mr. Toevs was progressed from Level 2 to Level 3 before he completed classes that were then being recommended). Accordingly, the reviews at Levels 1 through 3 were not meaningful.

## B. Levels 4 through 6

Levels 4, 5, and 6 present an even clearer violation, given defendants' concession that no reviews were conducted at these levels.[11] They contend that reviews are not

---

[11]  It appears that Ms. Moore and Ms. Glidewell were no longer Mr. Toevs's case managers by the time he was promoted to Level 4. Thus, any claim regarding the lack of review at Levels 4 through 6 implicates only Mr. Reid and Ms. Jones.

In a related argument, Mr. Reid and Ms. Jones argue that there is no evidence of any personal involvement by them in any deprivation of Mr. Toevs's rights. The evidence belies this argument. Mr. Toevs challenges the QLLP, which is established by OM 650-100. Mr. Reid signed the copy of OM 650-100 in the appellate record,

-18-

necessary because these levels are classified as "close custody" rather than "administrative segregation." But the evidence of record, including Mr. Toevs's verified statement and defendants' interrogatory answers would allow a jury to find that the basic conditions of confinement remain the same for all QLLP levels. Thus, at least for purposes of the record before us on summary judgment, we see no reason why Levels 4 through 6 would be exempt from *Hewitt*'s prescription of periodic review. And without any reviews, it is impossible for prisoners to track their progress through the QLLP. From this record, for example, it is impossible to determine when Mr. Toevs moved from Level 4 to Level 5 and from Level 5 to Level 6, why he was held at those levels for however long he was held there, and how it was determined that he was eligible to graduate from the QLLP. Essentially, then, at Levels 4 through 6 prisoners are being held indefinitely, without review, in the same basic conditions as Levels 1 through 3, and defendants' only justification is that the custody level has a different name. In these circumstances (and given that the defendants have waived any argument about the existence of a liberty interest), we have no hesitation in concluding that the failure to give Mr. Toevs any reviews at Levels 4, 5, and 6 violated his right to due process.

---

indicating that he adopted it. He also was made aware of Mr. Toevs's circumstances by a letter in the summer of 2006. Ms. Jones, as Mr. Reid's successor, apparently had the power to amend OM 650-100 had she chosen. In addition, Ms. Jones signed at least one of Mr. Toevs's review forms.

### 2. The law was not clearly established.

Even though Mr. Toevs did not receive meaningful periodic reviews, we conclude that defendants are entitled to judgment based on qualified immunity because it was not clearly established in 2005 through 2009 that the review process was inadequate. "Despite their participation in . . . constitutionally impermissible conduct, respondents may nevertheless be shielded from liability for civil damages if their actions did not violate 'clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Hope v. Pelzer*, 536 U.S. 730, 739 (2002) (quoting *Harlow*, 457 U.S. at 818).

"Ordinarily, in order for the law to be clearly established, there must be a Supreme Court or Tenth Circuit decision on point, or the clearly established weight of authority from other courts must have found the law to be as the plaintiff maintains." *Walker v. City of Orem*, 451 F.3d 1139, 1151 (10th Cir. 2006) (quotation omitted). It is not necessary, however, to find cases that are "fundamentally similar" or even "materially similar," because "officials can still be on notice that their conduct violates established law even in novel factual circumstances." *Hope*, 536 U.S. at 741. The "salient question . . . is whether the state of the law [at the time of the actions] gave respondents fair warning that their [conduct] was unconstitutional." *Id.*

Since *Hewitt*, it has been clearly established that prisoners cannot be placed indefinitely in administrative segregation without receiving meaningful periodic reviews. 459 U.S. at 477 n.9. This court, however, has not previously interpreted "meaningful" to require officials to inform prisoners placed in a stratified behavior-modification program

-20-

of the reasons for their continued placement, so as to provide a guide for future behavior. Moreover, this court has never considered the due-process implications of the QLLP. Accordingly, we cannot conclude that the state of the law from 2005 to 2009 gave defendants fair warning that the QLLP review process was not meaningful, or that the lack of reviews at QLLP Levels 4 through 6 was a due-process violation. Because the law was not clearly established, defendants are entitled to judgment based on qualified immunity.

### C.     Appointment of Counsel

"We review a district court's refusal to appoint counsel for an indigent prisoner in a civil case for an abuse of discretion." *Hill v. SmithKline Beecham Corp.*, 393 F.3d 1111, 1115 (10th Cir. 2004). "Only in those extreme cases where the lack of counsel results in fundamental unfairness will the district court's decision be overturned." *Id.* (quotation omitted). The factors to be considered include "the merits of a prisoner's claims, the nature and complexity of the factual and legal issues, and the prisoner's ability to investigate the facts and present his claims." *Id.*; *see also Rucks v. Boergermann*, 57 F.3d 978, 979 (10th Cir. 1995).

Mr. Toevs argues that he lost his case at the district court level because he was not able to frame his arguments effectively and encountered problems in discovery that counsel would have been able to surmount. "While we do not quarrel with [his] assertion that having counsel appointed would have assisted him in presenting his strongest possible case," *Rucks*, 57 F.3d at 979, we do not conclude that the denial of counsel was an abuse of discretion. As the district court found, Mr. Toevs capably litigated his case.

In fact, we compliment him on filing appellate briefs that clearly articulate his arguments and ably discuss the applicable precedents.[12]  Our affirmance based on qualified immunity is not due to a poor presentation or an inadequate record, but because the law was not clearly established at the time of the events at issue.

## III.    CONCLUSION

A prison system that holds a prisoner in administrative confinement under conditions that constitute an atypical and significant hardship for approximately seven years, with the sole justification of encouraging the prisoner to modify his behavior, is required under the Due Process Clause to provide the prisoner periodic meaningful reviews.  However, because the standards for meaningful periodic reviews during extended placement in a stratified incentive program involving confinement to administrative segregation were not previously clearly established in this circuit, summary judgment for defendants based on qualified immunity is therefore AFFIRMED.

---

[12]    Also, in a prior related appeal, Mr. Toevs was successful in challenging the district court's dismissal of his complaint.  *See Toevs v. Reid*, 267 F. App'x 817 (10th Cir. 2008).