FILED
**United States Court of Appeals**
**Tenth Circuit**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**
_____

**June 28, 2022**

**Christopher M. Wolpert**
**Clerk of Court**

MICHAEL RAY INGRAM,

    Plaintiff - Appellant,

v.

R. WERHOLZ; RICK RAEMISCH;
J. FALK, Sterling Correctional Facility
(SCF) Warden; J. CHAPDELAINE, SCF
Associate Warden; K. MCKAY, SCF
Physician's Assistant; DEAN WILLIAMS,
Colorado Department of Corrections
Executive Director,

    Defendants - Appellees.

No. 21-1170
(D.C. No. 1:14-CV-01024-REB-KMT)
(D. Colo.)

_____

**ORDER AND JUDGMENT**[*]
_____

Before **TYMKOVICH**, Chief Judge, **HOLMES** and **ROSSMAN**, Circuit Judges.
_____

In 2017, this court reversed the dismissal of certain prison-conditions claims

brought by pro se plaintiff Michael Ray Ingram and remanded for further

proceedings. *See Ingram v. Clements*, 705 F. App'x 721, 727 (10th Cir. 2017). On

---

[*] After examining the briefs and appellate record, this panel has determined
unanimously to honor the parties' request for a decision on the briefs without oral
argument. *See* Fed. R. App. P. 34(f); 10th Cir. R. 34.1(G). The case is therefore
submitted without oral argument. This order and judgment is not binding precedent,
except under the doctrines of law of the case, res judicata, and collateral estoppel. It
may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1
and 10th Cir. R. 32.1.

remand, the district court denied several non-dispositive motions by Mr. Ingram and then granted a summary-judgment motion filed by Roger Werholz, Rick Raemisch, James Falk, John Chapdelaine, and Dean Williams (collectively, the "State Defendants"), and a separate summary-judgment motion filed by Keri McKay. Mr. Ingram now appeals pro se.[1]  Exercising jurisdiction under 28 U.S.C. § 1291, we affirm.

## BACKGROUND

Mr. Ingram is an inmate in the Colorado Department of Corrections ("CDOC") who is confined at the Sterling Correctional Facility ("SCF").  He suffers from foot impairments that caused a prison doctor to prohibit him from standing more than 30 minutes at a time.  He also suffers from many other medical conditions that "significantly limit daily activities, singularly and aggregately," including migraines, nausea, light sensitivity, a choking cough, and pain in his neck, right elbow, lower back, left hip, knees, and ankles.  R. Vol. 1 at 142.

Mr. Ingram's first amended complaint targeted several conditions of his confinement.  The district court dismissed all of his claims under 28 U.S.C. § 1915A and Federal Rule of Civil Procedure 12(b)(6).  This court affirmed in part.  *Ingram*, 705 F. App'x at 727.  But it reversed the dismissal of two sets of claims.

First, Mr. Ingram had alleged that CDOC required him to stand in a long outside line to receive his medications (the "med line").  He asserted that the

---

[1] We construe Mr. Ingram's pro se filings liberally.  *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991).

extended standing for the med line was painful and aggravated his medical conditions, particularly in cold and windy weather. Sometimes he skipped the med line and tried to compensate with over-the-counter medications from the canteen. We held these allegations stated a claim under the Americans with Disabilities Act ("ADA") and the Rehabilitation Act ("RA"). *Id.* at 725-26.

Second, Mr. Ingram had alleged that he was assigned to work in various positions in the SCF kitchen. He asserted that this work assignment violated his medical restrictions and that the physical demands aggravated his medical conditions, causing him pain and fatigue. He asserted that Ms. McKay, a physician's assistant, violated the Eighth Amendment by refusing to issue work restrictions that would keep Mr. Ingram out of the kitchen. We held these allegations stated a claim under 42 U.S.C. § 1983 against Ms. McKay. *Id.* at 726.

On remand, the district court denied several non-dispositive motions filed by Mr. Ingram. The State Defendants and Ms. McKay moved for summary judgment. Mr. Ingram moved for six-month extensions to conduct litigation activities and to respond to Ms. McKay's motion, but the district court did not address those motions for more than six months after he filed them. During that time, Mr. Ingram did not respond to the summary-judgment motions or seek additional time to respond. Ultimately, the district court denied the motions for an extension and found no good cause for further extensions of time to respond.

The day after denying the motions for an extension, the district court granted both summary-judgment motions. It held that Mr. Ingram could not bring ADA and

RA claims against the State Defendants in their individual capacities. It further held he could not proceed with the ADA and RA claims against Messrs. Werholz, Raemisch, Falk, and Chapdelaine in their official capacities because they had all retired from CDOC by the time of the decision. The district court allowed Mr. Ingram to pursue his ADA and RA claims against the serving Executive Director of CDOC, Mr. Williams, in his official capacity. And it assumed that Mr. Ingram has one or more qualifying disabilities. It held, however, that the undisputed evidence did not show that he was denied any service or program, including his medicine, as a result of a disability.

As for the § 1983 claim against Ms. McKay, the district court determined that Mr. Ingram failed to establish an Eighth Amendment violation. It held the record did not allow an inference that Ms. McKay was deliberately indifferent to Mr. Ingram's serious medical needs. "Rather, the undisputed facts in the record show McKay properly and repeatedly exercised her considered medical judgment as to Mr. Ingram. That is the opposite of deliberate indifference." R. Vol. 3 at 323.

## DISCUSSION

### I.     Denial of Appointed Counsel

Mr. Ingram moved for the appointment of counsel in March 2019 and again in April 2020. The magistrate judge denied both motions, and the district court overruled Mr. Ingram's objections. We review the denial of appointed counsel for abuse of discretion. *See Rachel v. Troutt*, 820 F.3d 390, 397 (10th Cir. 2016). "A district court abuses its discretion when it (1) fails to exercise meaningful discretion,

such as acting arbitrarily or not at all, (2) commits an error of law, such as applying an incorrect legal standard or misapplying the correct legal standard, or (3) relies on clearly erroneous factual findings." *Farmer v. Banco Popular of N. Am.*, 791 F.3d 1246, 1256 (10th Cir. 2015).

"In considering whether the court acted within its discretion, we consider the merits of the claims, the nature of the claims, [the litigant's] ability to present the claims, and the complexity of the issues." *Rachel*, 820 F.3d at 397. "Only in those extreme cases where the lack of counsel results in fundamental unfairness will the district court's decision be overturned." *Toevs v. Reid*, 685 F.3d 903, 916 (10th Cir. 2012) (internal quotation marks omitted).

Mr. Ingram argues that "the numerous sources of pain and Chronic Sleep Deficit make it difficult and painful to write, but [also] to think clearly." Aplt. Opening Br. at 3A. He asserts that "appointment of counsel would benefit the court by a well-pled presentation that narrowed the issues and discovery and partial motions for summary judgment would simplify trial, and encourage a settlement." *Id.* at 3B. He further asserts that "a showing of all 4 factors was unnecessary" because his motions detailed "the severe nature/extent of [his] physical/cognitive impairments and noted that all efforts exacerbated [his] pain/suffering and were tantamount to torture." *Id.*

In denying both motions, the magistrate judge considered the relevant factors, both those set forth in this court's caselaw as well as the district court's own local

5

rules, *see* D.C. Colo.LAttyR 15(f)(1)(B).[2]  She acknowledged Mr. Ingram's medical

conditions, stating the March 2019 motion informed the court that "his own physical

impairments make writing painful and difficult."  R. Vol. 3 at 109.  And with regard

to the April 2020 motion, she recognized his averments that "his physical/cognitive

impairments have become so much greater" and that "everything is more difficult."

Aplee. Supp. App'x at 59 (internal quotation marks omitted).  She found these

averments outweighed, however, by other relevant factors Mr. Ingram did not

address.  Because this decision was not arbitrary and did not involve an error of law

or clearly erroneous factual findings, it was not an abuse of discretion.[3]

---

[2] The district court's rule states:

> In deciding whether to appoint counsel, the judicial officer should consider
> all relevant circumstances, including, but not limited to, the following:
>
> (i)      the nature and complexity of the action;
>
> (ii)     the potential merit of the claims or defenses of the
>          unrepresented party;
>
> (iii)    the demonstrated inability of the unrepresented party to retain
>          an attorney by other means; and
>
> (iv)     the degree to which the interests of justice, including the
>          benefits to the court, will be served by appointment of
>          counsel.

D.C. Colo.LAttyR 15(f)(1)(B).

[3] In his objections to the magistrate judge's denial of the March 2019 motion,
Mr. Ingram stated that his medical conditions made it difficult to address the relevant
factors.  But he then discussed factors the magistrate judge had identified, including
the complexity of the claims, his attempts to obtain counsel by other means, and the
interests of justice.  In his objections to the denial of the April 2020 motion, he
incorporated his prior filings, but he also discussed other factors, including the

In denying the March 2019 motion, for example, the magistrate judge recognized that Mr. Ingram's claims were not novel or complex, and that he "has relayed his claims so effectively that he successfully appealed two of his claims." R. Vol. 3 at 109. She reiterated these points in addressing the April 2020 motion. Guided by the standard of review, we likewise discern no abuse of discretion in the consideration of these factors.

Further, the magistrate judge also did not see any benefit that the court may derive from the assistance of appointed counsel. *See* D.C. Colo.LAttyR 15(f)(1)(B)(iv). This determination fell squarely within the magistrate judge's discretion, which was exercised according to applicable law. While we imagine counsel could have provided some benefit to the court, it was not an abuse of discretion for the magistrate judge to find that assistance of counsel was not so beneficial as to warrant appointment of counsel.

## II.    Denial of *Martinez* Report

In conjunction with his March 2019 motion for appointed counsel, Mr. Ingram requested that the court order a *Martinez* report. *See Martinez v. Aaron*, 570 F.2d

---

complexity of the claims, his inability to search for counsel, and the interests of justice. The district court overruled both objections, noting that it could overturn the magistrate judge's orders on non-dispositive motions only if they were "clearly erroneous or contrary to law," 28 U.S.C. § 636(b)(1)(A); Fed. R. Civ. P. 72(a), and finding there was "no basis to conclude that the rulings of the magistrate judge are clearly erroneous or contrary to law," R. Vol. 3 at 305; Supp. R. Vol. 1 at 46. We note that "[i]ssues raised for the first time in objections to the magistrate judge's recommendation are deemed waived." *Marshall v. Chater*, 75 F.3d 1421, 1426 (10th Cir. 1996). Even if we overlook the waiver, we agree with the district court that the magistrate judge's rulings were not clearly erroneous or contrary to law.

317, 319 (10th Cir. 1978) (en banc) (per curiam) (approving the district court's decision to order defendants, before they filed an answer, to conduct an investigation to enable the court to decide preliminary issues). The magistrate judge denied the motion, explaining that the court could not use a *Martinez* report to resolve disputed issues, and that Mr. Ingram could use the discovery process to request materials in the defendants' possession. "The Federal Rules of Civil Procedure prescribe discovery mechanisms applicable to all parties in federal civil litigation, and the court will not authorize a means for sidestepping those tools." R. Vol. 3 at 110-11. The district court overruled Mr. Ingram's objection.

Mr. Ingram asserts that a *Martinez* report would assemble "medical records, grievances, and letters [that] would establish why [he] sought care and what was provided" and would "facilitate the preparation of summary judgment affidavits requiring defendants to prepare affidavits based on personal knowledge." Aplt. Opening Br. at 3. "The issues would be narrowed, trial simplified, and settlement more likely." *Id.* at 3C.

"Under the *Martinez* procedure, the district judge or a United States magistrate [judge] to whom the matter has been referred will direct prison officials to respond in writing to the various allegations, supporting their response by affidavits and copies of internal disciplinary rules and reports." *Gee v. Estes*, 829 F.2d 1005, 1007 (10th Cir. 1987) (per curiam). "The purpose of the *Martinez* report is to ascertain whether there is a factual as well as a legal basis for the prisoner's claims." *Id.* Because they are intended to "allow the court to dig beneath the conclusional

8

allegations [of a pro se prisoner complaint,] [t]hese reports have proved useful to determine whether the case is so devoid of merit as to warrant dismissal without trial." *Id.* "There are limits, however, to what the court may do on the basis of a *Martinez* report; we have held, for example, that magistrates and judges may not make credibility determinations solely from conflicting affidavits." *Id.* The *Martinez* "process is designed to aid the court in fleshing out possible legal bases of relief from unartfully drawn pro se prisoner complaints, not to resolve material factual issues." *Northington v. Jackson*, 973 F.2d 1518, 1521 (10th Cir. 1992).

By the time Mr. Ingram moved for a *Martinez* report, we already had determined in *Ingram* that there was a sufficient factual and legal basis for the remanded claims to proceed beyond the dismissal stage. And although Mr. Ingram may have benefited had the court required the defendants to assemble the materials typically submitted in a *Martinez* report, "[c]ourts order the *Martinez* report not to provide discovery, but to aid in screening the complaint," *Rachel*, 820 F.3d at 396. As the district court observed, the items Mr. Ingram sought were available through the discovery process. Under the circumstances here, where the litigation had moved beyond the preliminary stages and discovery was available, we see no error in denying a *Martinez* report.

## III.    Denial of Extension to Serve Deceased Defendant

The original complaint named as a defendant "Frank" Clements. It was apparent, however, that Mr. Ingram intended to sue Tom Clements, a former executive director of CDOC. Mr. Clements died in March 2013, before Mr. Ingram

9

filed the action. Although a November 2014 waiver of service reflected that Mr. Clements was deceased, Mr. Ingram did not move to serve his estate.

After the remand in *Ingram*, Mr. Ingram sought to pursue claims against Mr. Clements. The magistrate judge substituted the current director of CDOC, Mr. Williams, for claims in Mr. Clements' official capacity, but opined that Mr. Ingram was too late to substitute Mr. Clements' estate for claims against him in his individual capacity. *See* Fed. R. Civ. P. 25(a)(1) (setting a 90-day period to substitute an estate). She recommended that the district court dismiss the individual-capacity claims against Mr. Clements.

Mr. Ingram objected, asserting that Rule 25(a)(1) did not apply and the 90-day period never commenced because the court and parties had never been properly notified of Mr. Clements' death. The State Defendants conceded that point, but they asserted that Mr. Ingram had waited too long to try to serve Mr. Clements. *See* Fed. R. Civ. P. 4(m) (setting 90-day period for service). The district court overruled Mr. Ingram's objection and dismissed the individual-capacity claims against Mr. Clements under Rule 4(m).

On appeal, Mr. Ingram argues that "[t]he failure to serve [the] estate is not relevant until the proper procedure for deceased parties is followed." Aplt. Opening Br. at 3D. We need not consider this contention, however, because any error in applying Rule 4(m) is harmless. *See* Fed. R. Civ. P. 61 ("At every stage of the proceeding, the court must disregard all errors and defects that do not affect any party's substantial rights."); *Bridges v. Wilson*, 996 F.3d 1094, 1099 (10th Cir. 2021)

(in applying harmless-error doctrine, "[t]he appellate court exercises common sense, trying to make a realistic assessment of the practical likelihood that the result in the district court would have been different had the error not occurred" (internal quotation marks omitted)).  Mr. Ingram has no claims to assert against Mr. Clements or his estate.  After *Ingram*, the only claims remaining against the prison officials were the ADA and RA claims related to standing in the med line.  705 F. App'x at 727.  Mr. Ingram could sue Mr. Clements in two capacities—Mr. Clements's official capacity or his individual capacity.  The magistrate judge substituted Mr. Williams as the official-capacity defendant.  And Mr. Ingram has not challenged the district court's holding that Title II of the ADA and Section 504 of the RA do not allow individual-capacity claims.  He thus cannot proceed against Mr. Clements (or his estate) with an individual-capacity claim.

## IV.    Denial of Leave to Amend

In July 2019, Mr. Ingram moved for leave to file a second amended complaint. The magistrate judge denied leave on the ground of futility, and the district court overruled Mr. Ingram's objections.  Although we generally review denial of leave to amend for abuse of discretion, our review is de novo when the denial is on futility grounds.  *Moya v. Garcia*, 895 F.3d 1229, 1239 (10th Cir. 2018) ("[H]ere, the district court denied leave to amend based on futility.  In this circumstance, our review for abuse of discretion includes de novo review of the legal basis for the finding of futility." (internal quotation marks omitted)).

11

The magistrate judge gave several reasons for considering the second amended complaint to be futile.  On appeal, Mr. Ingram does not take issue with those reasons, but points to the proposed second amended complaint as an example of why he needed the assistance of counsel.  Under the circumstances, he has waived any challenge to the denial of leave to amend.  *See Petrella v. Brownback*, 787 F.3d 1242, 1266 n.10 (10th Cir. 2015) (recognizing waiver through failure to make arguments in the opening appellate brief).

## V.    Denial of Extensions

On August 7, 2020, the district court set a deadline for Mr. Ingram to respond to Ms. McKay's motion for summary judgment, filed earlier that year.  Shortly thereafter, on August 10, the State Defendants filed their motion for summary judgment.  Also on August 10, Mr. Ingram mailed to the district court a motion for a six-month extension to perform research and undertake other litigation activities (Dist. Ct. Doc. 215).  Then, approximately a month later, on September 14, Mr. Ingram mailed a response to the district court's August 7 order, asserting that he had never received Ms. McKay's summary-judgment motion and requesting a six-month extension to respond (Dist. Ct. Doc. 217).

The district court did not address either Doc. 215 or Doc. 217 for more than six months after Mr. Ingram filed Doc. 217.  During that time, however, Mr. Ingram neither requested additional time to respond nor filed responses to the defendants' summary judgment motions.  On March 29, 2021, the district court concluded that

12

Mr. Ingram had not demonstrated good cause for an additional extension of time and

denied the motions for an extension:

> Since January of 2020, Mr. Ingram has filed with the court ten or more documents totaling over 30 hand-written pages.  In some of those documents, he describes in detail his medical conditions and the restrictions he faces in prison due to the pandemic.  The filings of Mr. Ingram demonstrate clearly that he is able to write and to coherently address moderately complex topics.  With a similar effort, Mr. Ingram could have prepared the items he addresses in [#215].  He could have prepared a response to the motion for summary judgment of Ms. McKay but he has not.

Aplee. Supp. App. at 110 (bracketed reference to Doc. 215 in original).  We review

this decision for an abuse of discretion.  *See Buchanan v. Sherrill*, 51 F.3d 227, 228

(10th Cir. 1995) (per curiam).

While "district courts generally have broad discretion to manage their

dockets," *Clark v. State Farm Mut. Auto. Ins. Co.*, 590 F.3d 1134, 1140 (10th Cir.

2009) (internal quotation marks omitted), litigants are entitled to rulings on their

motions, *see Farmer*, 791 F.3d at 1256 (classifying as an abuse of discretion a

"fail[ure] to exercise meaningful discretion, such as acting arbitrarily or *not at all*"

(emphasis added)). The record does not show why the district court took more than

six months to rule on Mr. Ingram's motions.  In the end, the district court's inaction

had the effect of giving Mr. Ingram several additional months—more than the six

months he requested in Doc. 215 and nearly all the six months he requested in Doc.

217—to undertake litigation activities and respond to the motions for summary

judgment.[4]  During that period, Mr. Ingram did not ask for a ruling on his motions for an extension, did not ask for more time, and did not file responses opposing summary judgment.

On appeal, Mr. Ingram insists that his motions "demonstrate how medical conditions/disabilities severely limit [his] productivity because of physical/cognitive impairments.  Productive time is also severely limited because of [his] physical/cognitive impairments along with prison schedule."  Aplt. Opening Br. at 3F.  But the district court took account of Mr. Ingram's medical conditions and the difficulties of litigating from prison.  Mr. Ingram does not argue that he was waiting for the district court to rule on his motions before submitting additional filings.  Nor does he argue that, had the district court explicitly granted the six-month extensions or otherwise acted sooner, he would have filed responses to the summary-judgment motions.  Accordingly, he has not shown the result would have been different, such as to require reversal on this ground.  *See* Fed. R. Civ. P. 61; *Bridges*, 996 F.3d at 1099.

## VI.    Grant of Summary Judgment

Finally, Mr. Ingram challenges the district court's grant of summary judgment to the defendants.  As stated, however, Mr. Ingram did not respond to the defendants'

---

[4] When Ms. McKay's counsel received Doc. 217 and learned that Mr. Ingram had not received a copy of Ms. McKay's summary-judgment motion, counsel mailed him an additional copy on September 30, 2020.  The district court's March 29, 2021, order was filed six months after that mailing.  Therefore, Mr. Ingram would have had something less than six months to respond to Ms. McKay's motion after receiving it.

motions for summary judgment. Therefore, all of his arguments challenging the grant of summary judgment are new on appeal. Under these circumstances, we can review his arguments only for plain error. *See Richison v. Ernest Grp., Inc.*, 634 F.3d 1123, 1128, 1130 (10th Cir. 2011). But when a party does not argue for plain-error review of new arguments, that party waives appellate review of those arguments. *See id.* at 1130-31. This rule generally applies to pro se litigants, as well as to counseled parties. *See Garrett v. Selby Connor Maddux & Janer*, 425 F.3d 836, 840 (10th Cir. 2005) ("[T]his court has repeatedly insisted that pro se parties follow the same rules of procedure that govern other litigants." (internal quotation marks omitted)). Accordingly, because Mr. Ingram has not addressed whether his summary-judgment arguments satisfy the plain-error doctrine, we must find those arguments waived.

## CONCLUSION

The district court's judgment is affirmed.

Entered for the Court

Veronica S. Rossman
Circuit Judge