FILED
United States Court of Appeals
Tenth Circuit

April 26, 2016

Elisabeth A. Shumaker
Clerk of Court

**PUBLISH**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**
_____

ARCHIE RACHEL,

      Plaintiff-Appellant,

v.

JEFFREY TROUTT, D.O., in his
official and individual capacity as
the facility doctor; KATRYNA
FRECH, R.N., in her official and
individual capacity; JANET
DOWLING, Warden, in her official
and individual capacity; FELICIA
HARRIS, Law Librarian, in her
official and individual capacity,

      Defendants-Appellees.

No. 15-6104

_____

**Appeal from the United States District Court
For the Western District of Oklahoma
(D.C. No. 5:14-CV-00655-R)**[*]
_____

Archie Rachel, Pro Se, Plaintiff-Appellant.

Stefanie Erin Lawson, Office of the Attorney General for the State of
Oklahoma, Oklahoma City, Oklahoma, for Defendants-Appellees.
_____

---

[*]    Mr. Rachel requests oral argument, but it would not materially aid
our consideration of the appeal. *See* Fed. R. App. P. 34(a)(2)(C); 10th Cir.
R. 34.1(G). Thus, we have decided the appeal based on the briefs.

Before **GORSUCH**, **McKAY**, and **BACHARACH**, Circuit Judges.

_____

**BACHARACH**, Circuit Judge.

_____

The Federal Rules of Civil Procedure permit a party to request an extension of time based on good cause. The plaintiff, Mr. Archie Rachel, is a state prisoner who was given 21 days to seek discovery, obtain and review responses that were not even due within the 21-day period, and respond to the defendants' motion for dismissal or summary judgment. All the while, Mr. Rachel had access to a prison law library for only a few hours per week. Given these circumstances, Mr. Rachel asked for additional time to respond to the defendants' dispositive motion. The district court did not rule on the request for additional time; thus, Mr. Rachel had no choice but to respond without the benefit of the requested discovery.

In this appeal, we ask: Should the district court have found good cause for an extension of time? We conclude the court should have granted an extension of time. Accordingly, we reverse and remand.

I.      **The Underlying Suit**

Mr. Rachel is a 71-year-old state prisoner who suffers from various medical conditions. In this suit, he alleges that (1) he routinely had to wait outdoors in adverse conditions to receive his medications, (2) he received

inadequate care from the prison's medical staff, and (3) the prison's grievance procedure was unfair.

Based on these allegations, Mr. Rachel invoked 42 U.S.C. § 1983, suing a prison doctor, a prison nurse and health services administrator, the warden, and a prison law librarian. In screening the complaint, the district court stayed discovery and ordered prison officials to prepare an investigative *Martinez* report.[1] According to Mr. Rachel, the report contained lies and omitted pertinent policies, medical documents, and administrative submissions. Nonetheless, the district court relied on the *Martinez* report in granting summary judgment to the defendants. This appeal followed.

## II. The district court should have granted an extension of time before ruling on the defendants' dispositive motion.

On February 2, 2015, the defendants filed both the dispositive motion and the prison officials' *Martinez* report. With the filing of the *Martinez* report, Mr. Rachel obtained an opportunity to conduct discovery for the first time. He quickly took advantage of this opportunity, serving each

---

[1] Under federal law, the district court had to screen Mr. Rachel's suit for frivolousness, failure to state a valid claim, and immunity. Prison Litigation Reform Act, 28 U.S.C. §§ 1915(e)(2)(B), 1915A(a)-(b). To facilitate this screening process, our circuit authorizes district courts to order prison officials to investigate an inmate's allegations to determine whether they have any factual or legal basis. *See Hall v. Bellmon*, 935 F.2d 1106, 1109 (10th Cir. 1991). Because this authorization stems from *Martinez v. Aaron*, 570 F.2d 317 (10th Cir. 1978), courts frequently refer to the resulting investigative report as a "*Martinez* report."

3

defendant with separate discovery requests within six days of the opening of the discovery period.[2] But Mr. Rachel faced a dilemma: He needed to respond to the defendants' dispositive motion by February 23, 2015, even though the defendants had until March 9, 2015 or later to respond to Mr. Rachel's discovery requests.

Mr. Rachel tried to avoid this dilemma by seeking an extension, explaining that he needed additional time to conduct discovery and to use the prison's law library, where his use was limited to a few hours per week. The court did not rule on the extension requests by February 23, 2015, when Mr. Rachel's response to the dispositive motion was due. So Mr. Rachel filed his response and planned to supplement it when he obtained the discovery responses. But he never obtained any responsive information.[3]

Without any opportunity for Mr. Rachel to conduct discovery, the magistrate judge recommended that the district judge deny an extension and grant summary judgment to the defendants, reasoning in part that Mr. Rachel had failed to furnish evidence of (1) deficiencies in his medical

---

[2]     R., Supp. Vol. 1 at 23, Reply to Defendants' Response (Mar. 9, 2015) (Doc. 46) (Mr. Rachel's statement that he served the warden with discovery requests on February 5, 2015, and served the prison doctor and nurse with discovery requests on February 8, 2015).

[3]     *See* R., Supp. Vol. 1 at 21-24, Reply to Defendants' Response (Mar. 9, 2015) (Doc. 46) (stating more than a month after service of the discovery requests that responsive information had not yet been provided).

care or (2) the prison officials' deliberate indifference. R., Vol. 1 at 624-27. These recommended rulings were adopted by the district judge. *Id.* at 652-63. In our view, however, the district court should have granted Mr. Rachel additional time to respond to the defendants' dispositive motion.

We review the denial of an extension of time for an abuse of discretion. *Ellis v. Univ. of Kan. Med. Ctr.*, 163 F.3d 1186, 1193 (10th Cir. 1999). Under this standard, we consider the rule and the facts before the district court.

In district court, the governing rule allows an extension of time "for good cause." Fed. R. Civ. P. 6(b)(1). This rule should be liberally construed to advance the goal of trying each case on the merits. *See Hanson v. City of Okla. City*, No. 94-6089, 1994 WL 551336, at *2 (10th Cir. Oct. 11, 1994) (recognizing that "courts often review Rule 6(b)(1) motions 'liberally'" (citation omitted)); *accord Ahanchian v. Xenon Pictures, Inc.*, 624 F.3d 1253, 1258-59 (9th Cir. 2010) (stating that Rule 6(b) must be "'liberally construed to effectuate the general purpose of seeing that cases are tried on the merits'" (citation omitted)); *see also* Fed. R. Civ. P. 1 ("[The Federal Rules] should be construed, administered, and employed . . . to secure the just, speedy, and inexpensive determination of every action and proceeding."). A leading treatise similarly suggests that district courts should normally grant extension requests, made before the deadline, in the absence of bad faith by the requesting party or prejudice to

another party. 4B Charles Alan Wright, Arthur R. Miller & Adam N. Steinman, *Federal Practice and Procedure* § 1165, at 605-08 (2015).

To overcome the summary judgment motion, Mr. Rachel had to present evidence of an objectively serious medical need and prison officials' deliberate indifference to this need. *Mata v. Saiz*, 427 F.3d 745, 752 (10th Cir. 2005). "Each step of this inquiry is fact-intensive." *Hartsfield v. Colburn*, 491 F.3d 394, 397 (8th Cir. 2007); *see also Leamer v. Fauver*, 288 F.3d 532, 547 (3d Cir. 2002) (stating that claim involving deliberate indifference to an inmate's treatment needs was "fact-intensive" and "require[d] further development of the record"). Because the issue is fact-intensive, "discovery may be important." *Bethune Plaza, Inc. v. Lumpkin*, 863 F.2d 525, 533 (7th Cir. 1988).

But Mr. Rachel had no opportunity to conduct discovery and obtain evidence before responding to the defendants' dispositive motion. Until the defendants filed that motion, discovery had been stayed. R., Vol. 1 at 53. Thus, Mr. Rachel had only 21 days to request discovery and obtain answers before responding to the dispositive motion. *Id.* at 54. This timing presented a dilemma for Mr. Rachel because the federal rules permit 30 days to respond to discovery requests. Fed. R. Civ. P. 33(b)(2), 34(b)(2)(A), 36(a)(3).

The dilemma was compounded by Mr. Rachel's limited access to the prison law library. The defendants' dispositive motion included citations to

6

over 40 cases, along with various rules and statutes. In the 21 days Mr. Rachel had to respond, he not only had to draft and serve discovery requests, but also to respond to the defendants' legal analysis—while able to use a law library for only a few hours per week. Meanwhile, Mr. Rachel was 71 years old, physically handicapped, experiencing health problems, and taking a variety of medications.

An extension of time for Mr. Rachel would not have resulted in any prejudice to the defendants. They insisted that Mr. Rachel did not need discovery in light of the medical records furnished with the *Martinez* report. But Mr. Rachel argued that this report was missing material medical records and policies addressing medical treatment, and the defendants conceded that the report did not include all of the requested discovery.[4]

Seeking to avoid this one-sided set of information before the district court, Mr. Rachel filed a request for additional time 14 days before his response deadline was to expire. Because the motion was timely, he needed

---

[4] *See, e.g.*, R., Supp. Vol. 1 at 18, Response to Plaintiff's Motion for Extension to Complete Discovery (Mar. 3, 2015) (Doc. 44) (stating that the *Martinez* report includes "the bulk of the discovery Plaintiff seeks"); *id.* at 19 (stating that the report "contains many of the documents and information Plaintiff is seeking in his discovery requests"); *id.* (promising to provide "discovery responses relevant to any remaining claims" after the court's ruling on the dispositive motion).

only to show good cause for the extension request. Fed. R. Civ. P. 6(b)(1).[5]

He did, and no one has questioned the presence of good cause for an extension of time. Mr. Rachel had no opportunity to pursue *any* discovery and had only a few hours per week to use the prison's law library. But the magistrate judge did not address Mr. Rachel's motion for an extension of time until the filing of the report and recommendation nearly two months after the response deadline.

In these circumstances, we conclude that the denial of an extension constituted an abuse of discretion. *Cf. Patty Precision v. Brown & Sharpe Mfg. Co.*, 742 F.2d 1260, 1265 (10th Cir. 1984) ("Because of the uncertainty created by the court's failure to exercise its discretion, the likelihood of prejudice to the plaintiff and the current status of this case,

---

[5]    We need not, and do not, decide whether the result might have been different if Mr. Rachel had tried to forestall a ruling on summary judgment by filing an affidavit under Fed. R. Civ. P. 56(d). Mr. Rachel moved for an extension of time under Fed. R. Civ. P. 6(b)(1) because of the unique procedural circumstances of this case and his limited access to the law library.  Such a motion does not require the filing of an affidavit. The defendants did not object to the motion on Rule 56(d) grounds, and the district court did not consider Rule 56(d) in denying the motion.  Under these circumstances, we will not reach the discretionary Rule 56(d) question in the first instance.  *See Ashby v. McKenna*, 331 F.3d 1148, 1151 (10th Cir. 2003) ("[W]ith respect to a matter committed to the district court's discretion, we cannot invoke an alternative basis to affirm unless we can say as a matter of law that it would have been an abuse of discretion for the trial court to rule otherwise." (internal quotation marks omitted)).

we reverse the court's grant of summary judgment and remand for the trial court to expressly consider plaintiff's Rule 56(f) affidavit.").

The district judge interpreted Mr. Rachel's request for more time to involve a complaint about the defendants' refusal to answer discovery requests. Based on this interpretation, the judge concluded that Mr. Rachel should have filed a motion to compel months earlier. We respectfully disagree with the district judge's interpretation of Mr. Rachel's motion for an extension of time.[6] In his motion, Mr. Rachel was simply explaining why he needed more than 21 days to respond to the dispositive motion. At that time, he was not complaining about the defendants' refusal to provide discovery within the 21-day period. Indeed, he could not have done so because the defendants had 30 days to respond to the discovery requests.

By the time Mr. Rachel filed a reply in support of his motion for an extension, however, the defendants' time to provide discovery responses had expired. Thus, in that reply, Mr. Rachel requested an order compelling the discovery responses so that he could supplement his response to the dispositive motion as needed.

It would have been better, of course, for Mr. Rachel to file a separate motion to compel rather than ask for additional relief in his reply brief. Ultimately, however, Mr. Rachel filed his initial motion to obtain an

---

[6] We do not fault the district judge. We realize that we have the luxury of 20-20 hindsight, which was not available to the district judge.

9

extension of time both because of the limitations on his use of the prison's law library and the earlier prohibition on discovery. In our view, the district court should have granted that request. *Cf. CenTra, Inc. v. Estrin*, 538 F.3d 402, 420 (6th Cir. 2008) ("Typically, when the parties have no opportunity for discovery, denying the Rule 56(f) motion and ruling on a summary judgment motion is likely to be an abuse of discretion.").

In light of this conclusion, we must reverse and remand for further proceedings on the defendants' dispositive motion.

## III. Mr. Rachel's Other Appeal Points

Mr. Rachel has also raised other appeal points. We address these points below because of the likelihood that they will recur on remand.

### A. The district court did not err in failing to take corrective action with regard to deficiencies in the *Martinez* report.

Mr. Rachel complains about deficiencies in the *Martinez* report. For example, he says that the report contained lies and omitted pertinent documents. These complaints led Mr. Rachel to object to the report in district court. The district court declined to rule on the objection and ultimately relied on the report when granting summary judgment to the defendants. According to Mr. Rachel, the district court should have required the prison officials to furnish documents incorrectly omitted from the *Martinez* report.

We disagree. Courts order the *Martinez* report not to provide discovery, but to aid in screening the complaint. *See Gee v. Estes*, 829 F.2d 1005, 1007 (10th Cir. 1987) ("The purpose of the *Martinez* report is to ascertain whether there is a factual as well as a legal basis for the prisoner's claims.").

Mr. Rachel complains that the prison officials failed to submit all of the relevant documents. This omission was allegedly material and might have affected the district court's screening. But on screening the complaint, the district court allowed Mr. Rachel to proceed with all of his claims. And on remand, Mr. Rachel can seek the missing documents through discovery. We have no need, at this stage, to address Mr. Rachel's complaints about the district court's failure to order supplementation of the *Martinez* report.

## B. The district court did not err in declining to appoint counsel.

Mr. Rachel moved for appointment of counsel and the district court denied the motion. This ruling did not constitute error.

Courts are not authorized to appoint counsel in § 1983 cases; instead, courts can only "request" an attorney to take the case. Prison Litigation Reform Act, 28 U.S.C. § 1915(e)(1); *see Mills v. Fischer*, 645 F.3d 176, 177 n.3 (2d Cir. 2011) ("A district court is empowered only to 'request' an attorney to represent an [in forma pauperis] plaintiff, § 1915(e)(1), but

11

case law commonly refers to the arrangement as 'appointed' counsel."); *see generally Mallard v. U.S. Dist. Court*, 490 U.S. 296, 309 (1989) (interpreting similar statutory language, in an earlier version of the statute, to prohibit "coercive appointments of counsel").[7]

We review the district court's denial of Mr. Rachel's request for an attorney only for an abuse of discretion. *Toevs v. Reid*, 685 F.3d 903, 916 (10th Cir. 2012). In considering whether the court acted within its discretion, we consider the merits of the claims, the nature of the claims, Mr. Rachel's ability to present the claims, and the complexity of the issues. *Rucks v. Boergermann*, 57 F.3d 978, 979 (10th Cir. 1995). The court considered these factors and declined to request counsel for Mr. Rachel.

This decision was reasonable. Each year, the district court receives hundreds of requests for legal representation and only a small number of attorneys are available to accept these requests. Accordingly, the district court must use discretion in deciding which cases warrant a request for counsel. To do otherwise would deprive clearly deserving litigants of an

---

[7] Attorneys sometimes agree to accept these requests and sometimes decline. The difficulty often lies in the court's inability to pay the attorney for his or her time or even to offer reimbursement for expenses. In the Western District of Oklahoma, for example, the court provides a limited fund with a general cap of $2,400 for the attorney's out-of-pocket expenses. *In re Expense Reimbursements in Civil Rights Cases*, General Order at 2, No. 12-7 (Order Authorizing Reimbursement of Expenses from the Non-Appropriated Fund) (W.D. Okla. Dec. 4, 2012).

opportunity to obtain legal representation. The dilemma is unfortunate for litigants like Mr. Rachel. But the dilemma was not the district court's fault; it was the product of the court's lack of authority to compel legal representation or to reimburse attorneys for their time.

As a result, we conclude that the district court did not abuse its discretion by denying Mr. Rachel's motion for appointment of counsel.

**C.    The district court did not err in denying Mr. Rachel's motion for appointment of a medical expert.**

After the defendants filed their dispositive motion, Mr. Rachel moved for appointment of a medical expert under Federal Rule of Evidence 706(a). The district court denied his motion.

Our review is confined to the abuse-of-discretion standard. *See United States v. Sloan*, 65 F.3d 861, 864 (10th Cir. 1995) ("A decision to deny, or grant, an application for expert services is a matter committed to the sound discretion of the district court and will not be disturbed on appeal absent a showing of prejudice."); *Duckett v. Mullin*, 306 F.3d 982, 999 (10th Cir. 2002) (stating that the abuse-of-discretion standard applies to denial of a motion for appointment of an expert). In our view, the district court did not abuse its discretion in declining to appoint a medical expert.

Though Federal Rule of Evidence 706(a) permits the district court to appoint a medical expert, courts rarely exercise this power. *See* 4 Jack B.

13

Weinstein & Margaret A. Berger, *Weinstein's Federal Evidence* ¶ 706.02[1], at 706-3 to -4 (2d ed. 2016) (stating that in practice, courts rarely appoint experts under Rule 706); 29 Charles Alan Wright & Victor James Gold, *Federal Practice and Procedure* § 6304, at 469 (1997) ("[T]he exercise of Rule 706 powers is rare under virtually any circumstances."). Some courts treat this power as "the exception and not the rule," limiting appointment of experts to the "truly extraordinary cases where the introduction of outside skills and expertise, not possessed by the judge, will hasten the just adjudication of a dispute without dislodging the delicate balance of the juristic role." *Reilly v. United States*, 863 F.2d 149, 156 (1st Cir. 1988).

When appointing medical experts, the court is to allocate payment between the parties. Fed. R. Evid. 706(c)(2). Mr. Rachel did not identify an independent expert and was unable to pay the district court's filing fee. Thus, the court could appoint an expert only by identifying one on its own and directing the defendants to bear all of the costs. *See Rowe v. Gibson*, 798 F.3d 622, 631-32 (7th Cir. 2015) (advising the district court to consider appointing a medical expert in a § 1983 case brought by an indigent prisoner while recognizing that "district courts don't have budgets for paying expert witnesses" and "[m]ost prisons are strapped for cash").

The district court did not abuse its discretion because the nature of Mr. Rachel's underlying claim is not sufficiently complicated to require an

14

independent medical expert. *See Ledford v. Sullivan*, 105 F.3d 354, 359 (7th Cir. 1997) (upholding the denial of a medical expert for an inmate-plaintiff's claim of deliberate indifference to serious medical needs because the determination of deliberate indifference was not sufficiently complicated to require a medical expert).

Mr. Rachel also argues that he needed expert testimony to rebut the defendants' arguments about the alleged adequacy of his medical treatment. "[B]ut it cannot follow that a court must therefore appoint an expert under Rule 706 whenever there are allegations of medical malpractice." *Gaviria v. Reynolds*, 476 F.3d 940, 945 (D.C. Cir. 2007).

As a result, we conclude that the district court did not abuse its discretion in denying Mr. Rachel's motion for appointment of a medical expert.

D.    **The district court did not err in granting summary judgment to the defendants on the due process claim involving the grievance procedure.**

Mr. Rachel also appeals the grant of summary judgment on his claim involving the failure to provide a fair grievance procedure. In district court, Mr. Rachel clarified that he was bringing this claim under state law rather than under the federal constitution. The district judge interpreted the claim accordingly, holding that state law did not mandate any particular type of grievance procedure.

On appeal, Mr. Rachel does not address this rationale. Instead, he argues that state law creates a liberty interest. The existence of a liberty interest would be significant only if Mr. Rachel were claiming a deprivation of due process under the state or federal constitution. But Mr. Rachel did not allege a due process violation in federal district court. It is too late for him to do so on appeal for the first time. *See Gorman v. Carpenters' & Millwrights' Health Benefit Tr. Fund*, 410 F.3d 1194, 1202 (10th Cir. 2005) ("[S]ound policy supports the proposition that an appellate court will not consider an issue raised for the first time on appeal.").

### E.    On remand, the district court should revisit its ruling on the petition for an emergency injunction.

Mr. Rachel filed a petition for an emergency injunction, asking for an order requiring prison officials to (1) send him to an outside medical specialist for gastrointestinal problems and (2) follow that specialist's recommendations for medications and treatment. R., Vol. 1 at 56-59. The magistrate judge denied the petition as moot based on the award of summary judgment, and the district judge adopted that recommendation without further analysis. Because we have reversed the summary judgment ruling, Mr. Rachel's petition should be examined upon remand.

**F.** **On remand, the district court should also revisit its ruling on the claims against the prison nurse.**

One of the defendants is a prison nurse and administrator, who allegedly contributed to the deficiencies in Mr. Rachel's medical care and to the prison's extended pill lines. The nurse was not served until April 1, 2015, and she did not enter an appearance. *See* R., Supp. Vol. 1 at 26. But claims against her were dismissed on screening based on the award of summary judgment to the other defendants. Because we have reversed the summary judgment ruling, the claims against the prison nurse should be revisited on remand.

**IV.** **The Court grants the motion for leave to proceed in forma pauperis.**

With the appeal, Mr. Rachel seeks leave to proceed in forma pauperis. He is unable to pay the filing fee, and this appeal is not frivolous. Accordingly, we grant Mr. Rachel's request. But we remind Mr. Rachel that this status eliminates only the need for prepayment of the filing fee. Mr. Rachel remains obligated to pay the filing fee in monthly installments. *See* Prison Litigation Reform Act, 28 U.S.C. § 1915(b).

17