**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**
_____

BRUCE EDWARD PETERSON,

     Plaintiff - Appellant,

v.

DR. TIMOTHY CREANY; DR.
BEATTE; DR. DAVID TESSIER;
RICK MEICER, R.N.; MARK
WIENPAHL; WARDEN LOU
ARCHULETA,

     Defendants - Appellees.

No. 16-1105
(D.C. No. 1:14-CV-01916-REB-
NYW)
(D. Colo.)

_____

**ORDER AND JUDGMENT**[*]
_____

Before **HOLMES**, **BALDOCK**, and **BACHARACH**, Circuit Judges.
_____

Mr. Bruce Peterson is a Colorado state prisoner who filed a pro se

action, invoking 42 U.S.C. § 1983 and alleging deliberate indifference to

---

[*]     Mr. Peterson requests oral argument, but it would not materially aid in our decision. As a result, we are deciding the appeal based on the briefs. *See* Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G).

    This order and judgment does not constitute binding precedent except under the doctrines of law of the case, res judicata, and collateral estoppel. But the order and judgment may be cited for its persuasive value under Fed. R. App. P. 32.1(a) and Tenth Cir. R. 32.1(A).

serious medical needs.[1] The defendants filed a motion for dismissal or summary judgment, and Mr. Peterson moved for appointment of counsel.

The district court denied Mr. Peterson's motion for appointment of counsel and granted (1) the motion to dismiss by six defendants (Tessier, Archuleta, Creany, Beatte, Miller, and Jane Doe) on the ground that Mr. Peterson had failed to state a claim on which relief can be granted and (2) the motion for summary judgment by two defendants (Wienpahl and Meicer) based on a failure to exhaust available administrative remedies.

Mr. Peterson appeals these rulings, and we affirm.

## I.      Motion to Request Counsel

The district court denied Mr. Peterson's motion for appointment of counsel, reasoning that the case was not complex enough to warrant appointment of counsel and that Mr. Peterson could sufficiently advance the necessary facts and legal arguments. The court further found that any potential issues regarding adequate access to the prison law library could be addressed in due course, that Mr. Peterson's concerns about the trial were premature and not unique to his case, and that the merits were not sufficiently clear to require counsel.

---

[1]      The district court liberally interpreted the complaint to include a claim under the Americans with Disabilities Act. In the appeal, however, Mr. Peterson does not address the viability of a claim under this statute.

We review this reasoning for an abuse of discretion. *Rachel v. Troutt*, 820 F.3d 390, 397 (10th Cir. 2016). Applying this standard, we conclude that the district court acted within its discretion. The court was powerless to compel an attorney to take the case; the court could only ask an attorney to consider representing Mr. Peterson. *Id*. at 396. In deciding whether to request counsel for Mr. Peterson, the court was to consider the merits, the nature of the claims, Mr. Peterson's ability to present the claims, and the complexity of the issues. *Id*. at 397. The district court considered these factors and supplied a cogent explanation for the decision. That decision fell within the district court's discretion.

## II. Dismissal

Even if the allegations in the complaint are true, they would not create liability for defendants Tessier, Archuleta, Creany, Beatte, Miller, and Jane Doe. Thus, the district court properly dismissed the claims against these six individuals.

### A. Allegations in the Amended Complaint[2]

In considering the ruling on the motion to dismiss, we start with the amended complaint.

---

[2] Because Mr. Peterson proceeds pro se, we construe his filings liberally but do not act as his advocate. *Yang v. Archuleta*, 525 F.3d 925, 927 n.1 (10th Cir. 2008).

There Mr. Peterson alleges a long history of mental illness, epilepsy, and hepatitis C. His ailments were recorded in the prison system's database and were classified as requiring chronic care. But that classification was removed.

Mr. Peterson alleges that (1) Dr. Timothy Creany prescribed Tegretol to treat bipolar disorder and epilepsy despite Mr. Peterson's hepatitis and (2) Tegretol is contraindicated for patients with liver problems. When Mr. Peterson complained about side effects, he was allegedly told that mental health patients had to continue to take medication or face lockdown and suspension of privileges.

Dr. Creany then ran a blood test, discovered that Mr. Peterson's hepatitis had been "reactivated" because of the Tegretol, and said to stop taking the medication. Dr. Creany also ordered the dispensary to stop giving Tegretol to Mr. Peterson.

By this time, Mr. Peterson was allegedly near death, with blood-clot bruising on his skin and severe liver damage. He complained about the blood clots to a prison psychiatrist, Dr. Miller, who was allegedly dismissive.

Dr. Miller then prescribed Carbamazepine, which is the generic equivalent of Tegretol. The Carbamazepine allegedly caused (1) pain in Mr. Peterson's leg, joints, neck, stomach, head, chest, and lungs; (2) weakness; (3) vomiting; (4) bleeding; (5) swelling of the feet and

4

throat; (6) confusion; (7) shortness of breath; (8) sleep disruption; (9) faintness; (10) loss of teeth; and (11) bloodshot eyes.

Mr. Peterson alleges that another prison psychiatrist, Dr. Hope Beatte, shared responsibility for the second prescription. According to Mr. Peterson, Dr. Beatte should not have ordered Carbamazepine without examining the medical records, which contained Dr. Creany's instruction for the dispensary not to prescribe Tegretol.

In addition, Mr. Peterson claims that when confronted, Dr. Miller reacted with hostility and blamed Mr. Peterson for not knowing that Carbamazepine was the same as Tegretol and was equally life-threatening to someone with hepatitis.

Mr. Peterson was then prescribed a pain medication by an outside doctor. But a prison nurse, Mr. Rick Meicer, allegedly refused to provide the medication because of its expense. Nurse Meicer instead gave Mr. Peterson ice to apply to his blood clots. The ice allegedly froze a clot, leaving Mr. Peterson with a limp, thrombosis, and exacerbation of sciatic pain.

Mr. Peterson also alleges that he showed his complications to another health care provider, Mr. Mark Wienpahl, who purportedly laughed and did nothing. According to Mr. Peterson, an unidentified nurse observed burst veins but said to put in a sick-call slip instead of providing an immediate appointment. Mr. Peterson followed this advice and waited before seeing

5

Dr. Creany, which led to Mr. Peterson's legs giving out, more burst veins, bloody urine, and nose bleeds.

Additionally, Mr. Peterson asserts that the Health Services Administrator, Dr. David Tessier, failed to properly supervise his staff and neglected to act even after being informed about the prescriptions for Tegretol and Carbamazepine. Mr. Peterson adds that the prison warden (Mr. Lou Archuleta) (1) failed to ensure satisfaction of Mr. Peterson's medical needs without discrimination and (2) maintained a policy requiring prisoners to take medication that was detrimental.

## B. Standard of Review

When reviewing a dismissal under Federal Rule of Civil Procedure 12(b)(6), we engage in de novo review, accepting the well-pleaded factual allegations as true and construing them most favorably to the plaintiff. *Thomas v. Kaven*, 765 F.3d 1183, 1190 (10th Cir. 2014). Under this standard, the complaint suffices only if it contains enough factual matter to state a plausible claim for relief. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* Plausibility does not require probability, but does require more than a sheer possibility of illegality. *Id.*

6

## C. Dismissal of the Claims Against Warden Archuleta and Dr. Tessier

The district court dismissed the claims against Warden Archuleta and Dr. Tessier, reasoning that Mr. Peterson's allegations had failed to include facts that would show personal participation. These dismissals were proper.

"Section 1983 provides a federal cause of action against any person who, acting under color of state law, deprives another of his federal rights." *Conn v. Gabbert*, 526 U.S. 286, 290 (1999). In § 1983 cases, governmental officials bear liability only for their own misconduct. *Iqbal*, 556 U.S. at 677. Although a supervisor can sometimes incur liability under § 1983 for the unconstitutional acts of subordinate employees, supervisory status alone is insufficient. *Dodds v. Richardson*, 614 F.3d 1185, 1195 (10th Cir. 2010). In addition, the plaintiff must allege facts showing a link between the constitutional violation and a supervisor's breach of responsibilities. *Schneider v. City of Grand Junction Police Dep't*, 717 F.3d 760, 767 (10th Cir. 2013).

For the claim against Dr. Tessier, Mr. Peterson's allegations were conclusory, stating only that Dr. Tessier had failed to properly supervise his staff and had done nothing after learning of the prescription for Tegretol. These allegations constitute "naked assertions devoid of further factual enhancement," which are insufficient to allow "the reasonable

7

inference" that Dr. Tessier incurs liability under § 1983. *Iqbal*, 556 U.S. at 678 (internal quotation marks omitted).

For Warden Archuleta, Mr. Peterson could prevail by showing that the warden had (1) "promulgated, created, implemented or possessed responsibility for the continued operation of a policy," (2) "caused the complained of constitutional harm," and (3) "acted with the state of mind required to establish the alleged constitutional deprivation." *Dodds*, 614 F.3d at 1199.

Mr. Peterson alleges that Warden Archuleta was responsible for the continued use of a policy that forces mental health patients to take detrimental medications or face lockdown and suspension of privileges. But, even if the policy existed, it would not link Warden Archuleta to the alleged constitutional violation. There is nothing in the complaint suggesting that Warden Archuleta knew that Mr. Peterson had been given the wrong medication.

In the absence of such allegations, the district court was right to dismiss the claims against Warden Archuleta and Dr. Tessier.

### D. Dismissal of the Claims Against Dr. Creany, Dr. Miller, Dr. Beatte, and Jane Doe

The Eighth Amendment is violated by deliberate indifference to serious medical needs of prisoners. *Estelle v. Gamble*, 429 U.S. 97, 104 (1976). Liability is imposed only when a prison official disregards an

8

excessive risk to inmate health or safety. *Farmer v. Brennan*, 511 U.S 825, 837 (1994). Negligence is not enough. *Estelle*, 429 U.S. at 106.

The district court determined that Mr. Peterson had failed to state a valid § 1983 claim against Dr. Creany, Dr. Beatte, Dr. Miller, and Jane Doe, reasoning that the alleged conduct amounted only to negligence. We agree.

Though Dr. Creany may have been negligent in prescribing Tegretol, there were no allegations that Dr. Creany had known that the medication would be harmful. When Mr. Peterson complained about side effects, Dr. Creany admittedly ordered a blood test, reviewed the results, and immediately discontinued the Tegretol. Dr. Creany's alleged mistake in prescribing Tegretol would not suggest deliberate indifference. *See Johnson v Stephan*, 6 F.3d 691, 692 (10th Cir. 1993) (holding that an improper prescription for a leg stocking, intended to treat leg cramps and swelling, would not rise to the level of a constitutional violation); *see also Brown v. Prison Health Servs., El Dorado Corr. Facility*, 159 F. App'x 840, 841 (10th Cir. 2005) (concluding that a § 1983 plaintiff failed to state a claim when there was no indication that prison officials knowingly prescribed an inappropriate medication).[3]

---

[3] *Brown* is unpublished and therefore not precedential. But we view *Brown* as persuasive.

9

Similarly, Mr. Peterson's allegations against Dr. Miller[4] and Dr. Beatte amounted only to negligence. These physicians allegedly prescribed the generic equivalent of Tegretol after Dr. Creany had discontinued use of the brand name drug (Tegretol). But this alleged mistake would not suggest a violation of the Eighth Amendment.

The same is true for the claim against Jane Doe, who allegedly instructed Mr. Peterson to submit a sick-call slip instead of permitting an immediate examination. At most, this instruction might constitute negligence, not deliberate indifference.

On appeal, Mr. Peterson does not show any flaws in the district court's analysis. In our view, the district court correctly held that the complaint did not include factual allegations showing the deliberate indifference of Dr. Creany, Dr. Miller, Dr. Beatte, or Jane Doe.

III. **Summary Judgment on the Claims Against Mr. Wienpahl and Nurse Meicer**

The Prison Litigation Reform Act of 1995 provides that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail,

---

[4] On the claim involving Dr. Miller, Mr. Peterson argues that a court should order production of a videotape allegedly showing Dr. Miller yelling at Mr. Peterson and blaming him for not knowing that Carbamazepine was the same drug as Tegretol. For the sake of argument, we may assume that Mr. Peterson has accurately described this incident. In light of this assumption, the alleged videotape would make little difference.

prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). Based on this provision, the district court granted summary judgment to defendants Wienpahl and Meicer. This ruling was correct.[5]

The district court determined that Mr. Peterson had completed the Colorado Department of Corrections' three-step grievance process only as to the medication prescribed by Drs. Creany and Beatte. The court credited the arguments by Mr. Peterson that (1) he had not known Dr. Miller's identity when the grievance was submitted and (2) prison regulations prohibited the filing of a second grievance on the same issue. Nonetheless, the court reasoned that Mr. Peterson could have named Mr. Wienpahl or Nurse Meicer in the grievance. Accordingly, the court concluded that Mr. Peterson had failed to exhaust available administrative remedies on the claims against Mr. Wienpahl and Nurse Meicer.

We review an order granting summary judgment de novo, applying the same standards that applied in district court. *Fields v. City of Tulsa*, 753 F.3d 1000, 1008 (10th Cir. 2014). In district court, a motion for summary judgment must be granted if (1) the movant shows the absence of a genuine dispute regarding a material fact and (2) the movant is entitled to

---

[5] The district court also granted summary judgment to defendants Archuleta and Tessier. But we need not address this aspect of the ruling because Mr. Archuleta and Dr. Tessier are entitled to dismissal.

11

judgment as a matter of law. Fed. R. Civ. P. 56(a). We view the record and reasonable inferences in the light most favorable to Mr. Peterson. *Fields*, 753 F.3d at 1009.

Mr. Peterson contends that he exhausted available administrative remedies based on the authorities' final response. But this contention is based on a misreading of the final response. It states that Mr. Peterson had *not* exhausted available administrative remedies because a record request was not the proper procedure: "Because this is not a valid method for review of your issue [i.e., record requests], you have *not* exhausted your administrative remedies. This is the final administrative action in this matter." R. at 107-08 (emphasis added).

According to Mr. Peterson, he did everything that he could because regulations prevented him from filing another grievance on the same matter. But Mr. Peterson knew the identities of Mr. Wienpahl and Nurse Meicer. Aware of what they had allegedly done, Mr. Peterson submitted a grievance silent about their conduct; the grievance was confined to the actions of Drs. Creany, Miller, and Beatte. Accordingly, the grievance did not sufficiently apprise prison officials of the nature of the claims against Mr. Wienpahl or Nurse Meicer. *See Kikumura v. Osagie*, 461 F.3d 1269, 1285 (10th Cir. 2006) (holding that an inmate properly exhausts a claim if his grievance "provides prison officials with enough information to investigate and address the inmate's complaint internally"), *abrogated on*

*other grounds by Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007), *as explained in Robbins v. Oklahoma*, 519 F.3d 1242, 1246-47 (10th Cir. 2008). Accordingly, we conclude that the district court properly determined that Mr. Peterson had failed to exhaust available administrative remedies concerning defendants Wienpahl and Meicer. These defendants were properly awarded summary judgment.

## IV.   Leave to Proceed In Forma Pauperis

We grant Mr. Peterson's request for leave to proceed in forma pauperis. The relevant statute, 28 U.S.C. § 1915(a)(1), does not permit litigants to avoid payment of filing and docketing fees. Instead, the statute serves only to excuse prepayment of these fees. Though we have disposed of this matter on the merits, Mr. Peterson remains obligated to pay all filing and docketing fees. He is directed to pay the fees to the Clerk of the District Court for the District of Colorado.

Mr. Peterson moves for waiver of partial payments based on hardship. He bases the alleged hardship on his inability to maintain hygiene. But the statute does not entail confiscation of all funds in an institutional account; instead, the statute requires periodic payment of only 20% of the income generated in the previous month. *See* 28 U.S.C. § 1915(b)(2). Mr. Peterson has not shown how partial payments, as required in the statute, would interfere with his ability to maintain proper hygiene. *See Miller v. Lincoln Cty.*, 171 F.3d 595, 596 (8th Cir. 1999)

13

("When it passed the Prison Litigation Reform Act . . ., Congress made the legislative determination that limiting the amount of filing fees paid from a prisoner's account to 20% of the previous month's income . . . adequately accommodated a prisoner's need for money for personal items."). Thus, we deny the motion to waive partial payments toward the filing fee.

## V.    Disposition

We affirm the rulings

- denying Mr. Peterson's motion for appointment of counsel,

- granting the motion to dismiss by defendants Tessier, Archuleta, Creany, Beatte, Miller, and Jane Doe, and

- granting the motion for summary judgment by defendants Wienpahl and Meicer.

We also grant leave to proceed in forma pauperis.

Entered for the Court


Robert E. Bacharach
Circuit Judge