**FILED**
**United States Court of Appeals**
**Tenth Circuit**

## UNITED STATES COURT OF APPEALS

## FOR THE TENTH CIRCUIT

**September 29, 2025**

**Christopher M. Wolpert**
**Clerk of Court**

_____

AWNTWANAY SWEPSON,

    Plaintiff - Appellant,

v.

AIMBRIDGE EMPLOYEE SERVICE
CORP.,

    Defendant - Appellee.

No. 25-3006
(D.C. No. 6:23-CV-01040-HLT)
(D. Kan.)

_____

## ORDER AND JUDGMENT[*]
_____

Before **HOLMES**, Chief Judge, **TYMKOVICH**, and **MORITZ**, Circuit Judges.
_____

Awntwanay Swepson, proceeding pro se, appeals from the district court's

grant of summary judgment to her former employer, Aimbridge Employee Service

Corporation, in her lawsuit alleging violations of the Americans with Disabilities Act

(ADA), 42 U.S.C. § 12112(a).  Exercising jurisdiction under 28 U.S.C. § 1291, we

affirm.

---

[*] After examining the briefs and appellate record, this panel has determined
unanimously that oral argument would not materially assist in the determination of
this appeal.  *See* Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G).  The case is therefore
ordered submitted without oral argument.  This order and judgment is not binding
precedent, except under the doctrines of law of the case, res judicata, and collateral
estoppel.  It may be cited, however, for its persuasive value consistent with
Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

## BACKGROUND

**A.    Factual Background**

Aimbridge is a hotel management company. From June 30 to October 31, 2021, it employed Ms. Swepson as a front-desk agent and laundry attendant at an Aloft Hotel in Wichita, Kansas. Ms. Swepson's employment ended when another management company replaced Aimbridge on November 1, 2021.

Ms. Swepson has been diagnosed with physical and mental impairments, including plantar fasciitis in her right foot. At her request, Aimbridge provided a chair when she worked at the front desk. And because she requested shifts of six or six-and-a-half hours, Ambridge scheduled her for flexible seven-hour shifts that included two breaks and a 30-minute lunch. At her deposition, Ms. Swepson testified she "was working well having those accommodations being met." R. at 135.

During her employment, Ms. Swepson was involved in incidents with three co-workers. One was in late July, when she was being cross-trained as a bartender. Her trainer told her she could not sit while working at the bar, even though her manager had said she could have a chair. She complained to her manager that the trainer was condescending and rude, and the manager granted her request to go home early. The other two incidents were in mid-October. On October 14, Ms. Swepson accused a male employee of pushing her, grabbing her arm, and calling her "ghetto." R. at 187 (internal quotation marks omitted). Ms. Swepson called the police, but ultimately she did not file charges against the co-worker. In the second incident, during Ms. Swepson's next shift four days later, Ms. Swepson and a female employee

2

had a verbal altercation after the other employee accused Ms. Swepson of hitting her with her hair as Ms. Swepson walked by. Ms. Swepson again called the police. After the police took a report, she went home and requested some time off.

Later on October 18, the hotel's assistant general manager (AGM) texted Ms. Swepson about onboarding with the new company. Ms. Swepson texted, "I don't mind being called in please let me know 24 hours in advance." R. at 209. The AGM messaged, "I will Schedule you for your on boarding . . . at 3:30 pm Tuesday the 26th. That way you have plenty of notice," and Ms. Swepson responded, "Okay thank you." *Id.* The AGM added, "Make sure you do not miss it because anyone not signed up by the 1st has to be hired outside of [A]imbridge." *Id.* Ms. Swepson replied, "Yes ma'am." *Id.* But she did not attend the October 26 onboarding session, because she did not view the AGM's text as a schedule. She did not apply to the new management company and never worked at the hotel after October 18, 2021.

## B. District-Court Litigation

After exhausting her administrative remedies, Ms. Swepson filed suit under the ADA. The district court construed her complaint as bringing claims for failure to accommodate, disparate treatment based on disability, and hostile work environment based on disability, which Ms. Swepson does not dispute. The district court granted Aimbridge's motion for summary judgment.

The district court first concluded that Ms. Swepson did not demonstrate that she is disabled within the meaning of the ADA.[1] It also identified other reasons for denying the three claims. Regarding the failure-to-accommodate claim, the district court held the undisputed facts showed that Aimbridge had granted every request Ms. Swepson made for reasonable accommodations. Regarding the disparate-treatment claim, it held Ms. Swepson had not shown that she suffered an adverse employment action[2] and she had not identified any evidence linking the termination of her employment to her disabilities. Finally, regarding the hostile-work-environment claim, the district court held she presented no evidence that any of the incidents with her co-workers arose out of a disability-related animus (in fact, she presented no evidence that the co-workers even knew that she had or claimed to have a disability) and the incidents were not severe or pervasive enough to qualify as a hostile work environment.

Ms. Swepson filed two post-judgment motions under Fed. R. Civ. P. 59(e) and 60(b) challenging the ruling and attaching evidence regarding her impairments. She also alleged that the court was biased against her, and that the federal court system

---

[1] Under the ADA, "disability" is defined as "(A) a physical or mental impairment that substantially limits one or more major life activities of such individual; (B) a record of such an impairment; or (C) being regarded as having such an impairment." 42 U.S.C. § 12102(1).

[2] "[A]n employment action is adverse if a plaintiff can demonstrate that she experienced some harm respecting an identifiable term or condition of employment as a result of that action." *Scheer v. Sisters of Charity of Leavenworth Health Sys., Inc.*, 144 F.4th 1212, 1216 (10th Cir. 2025) (emphasis and internal quotation marks omitted).

presented "systemic barriers" to pro se litigants, especially disabled litigants.

R. at 404; *see also* R. at 477-78 (alleging impediments to her ability to litigate).

In a comprehensive order, the district court identified no grounds to reconsider

its previous rulings. It further held that Ms. Swepson's claims of bias were

"conclusory and unsupported by the record." R. at 492. As for her allegations of

systemic difficulties facing pro se litigants, the district court stated that "contrary to

her assertions," she "was given considerable leeway throughout this case, including

during summary-judgment briefing." R. at 488 (citing examples). The court also

"note[d] the effort [it] expended to analyze Swepson's factual submissions in the

summary-judgment briefing." *Id.* It concluded:

> The docket belies any notion that Swepson was prevented from fairly
> litigating this case. Swepson's filing habits, briefs, and participation in
> hearings demonstrate that she was more than capable of participating [in]
> this litigation, did so participate, and was able to represent herself. She
> ultimately did not succeed on her claims. But that alone does not show
> inequity.

R. at 493.

## DISCUSSION

Ms. Swepson challenges the rejection of her claims, asserting that she is

disabled, she was subjected to a hostile work environment, and Aimbridge did not

offer her reasonable accommodations, resulting in significant economic and

psychological damages to her. We review the grant of summary judgment de novo.

*Iweha v. Kansas*, 121 F.4th 1208, 1220 (10th Cir. 2024). We review the denial of a

motion under Fed. R. Civ. P. 59(e) or 60(b) for abuse of discretion. *See Butler v.*

*Kempthorne*, 532 F.3d 1108, 1110 (10th Cir. 2008).  Because Ms. Swepson proceeds pro se, we liberally construe her filings, but we do not act as her advocate. *See Gallagher v. Shelton*, 587 F.3d 1063, 1067 (10th Cir. 2009).

The district court thoroughly considered Ms. Swepson's claims and thoughtfully explained why she failed to show there is a genuine issue of material fact for trial.  It later carefully addressed point-by-point why she was not entitled to relief under either Fed. R. Civ. P. 59(e) or 60(b).  Having reviewed the briefs, record, and applicable law, we affirm the grant of summary judgment to Aimbridge and the denial of the post-judgment motions for substantially the reasons discussed in the district court's orders filed on December 5, 2024, and January 15, 2025.

Ms. Swepson also argues the magistrate judge was biased against her.  In support, she states she "faced significant challenges in court proceedings, including denial of motions for representation and procedural rulings that have impeded her ability to present her case effectively."  Aplt. Opening Br. at 5.  But "judicial rulings alone almost never constitute a valid basis for a bias or partiality motion." *Liteky v. United States*, 510 U.S. 540, 555 (1994).  And our review of the record does not reveal evidence of bias.  In considering the motions for appointed counsel, the magistrate judge carefully considered the appropriate factors, *see Rucks v. Boergermann*, 57 F.3d 978, 979 (10th Cir. 1995), and decided they weighed against Ms. Swepson.  Those decisions were not an abuse of discretion. *See id.* (stating we review denial of appointed counsel in a civil case for abuse of discretion).

6

Ms. Swepson asserts that "[t]he denial of [her] repeated motions for court-appointed counsel underscores systemic inequities that disproportionately harm disabled pro se litigants" and "[t]he failure of the District Court to accommodate these challenges reflects a broader disregard for judicial principles of fairness, impartiality, and access to justice." Aplt. Opening Br. at 3. In civil cases, however, courts may only request counsel, not compel and pay for representation. *See Rachel v. Troutt*, 820 F.3d 390, 397 (10th Cir. 2016). The requests for legal assistance greatly outnumber the available attorneys:

> Each year, the district court receives hundreds of requests for legal representation and only a small number of attorneys are available to accept these requests. . . . The dilemma is unfortunate for litigants like [Ms. Swepson]. But the dilemma was not the district court's fault; that dilemma was the product of the court's lack of authority to compel legal representation or to reimburse attorneys for their time.

*Id.*; *see also Watts v. Kidman*, 42 F.4th 755, 763 (7th Cir. 2022) ("[T]he decision whether to recruit a lawyer for a particular plaintiff is made against the twofold backdrop of a high volume of indigent, pro se litigants . . . and a small pool, by comparison, of attorneys willing and able to take those cases on pro bono."). Here, in consideration of her pro se status, the district court took measures to alleviate the burdens of pro se litigation. It required Aimbridge to notify Ms. Swepson of the requirements for responding to a summary-judgment motion; granted Ms. Swepson's "Motion for a More Definite Statement" to the extent the court could offer some clarity; granted Ms. Swepson additional time to respond to the summary-judgment motion and to file her exhibits; and attempted to marshal the facts as best it could in

evaluating whether summary judgment was appropriate.  In these circumstances, the difficulties Ms. Swepson faced as a pro se litigant do not require reversal.

## CONCLUSION

We affirm the district court's judgment.

Entered for the Court

Jerome A. Holmes
Chief Judge