OSCN Found Document:Question Submitted by: The Honorable Steve Bashore, Oklahoma House of Representatives, District 7

 

 
 Question Submitted by: The Honorable Steve Bashore, Oklahoma House of Representatives, District 72026 OK AG 1Decided: 02/13/2026OKLAHOMA ATTORNEY GENERAL OPINIONS
Cite as: 2026 OK AG 1, __ P.3d __

 

ATTORNEY GENERAL OPINION

¶0 This office has received your request for an official Attorney General Opinion in which you ask, in effect, the following questions:

1. May a county sheriff transport an inmate of the county jail across state lines for medical treatment in cases where the closest medical facility appropriate to treat the inmate's condition is in another state? 

2. Could a sheriff who transports an inmate to an in-state medical facility for treatment, despite a comparable or better out-of-state facility being closer to the county jail, be held liable for injury or death that results? 

3. Do any constitutional provisions prevent the enactment of a statute allowing a sheriff to transport an inmate to an out-of-state medical facility? 

I.

SUMMARY

¶1 Under Oklahoma and federal law, county sheriffs must provide medical care to jail inmates, including emergency treatment. However, a sheriff's custodial authority over an inmate does not extend outside of Oklahoma, meaning a sheriff is not authorized to transport an inmate to another state for medical care. Because of this limitation, a sheriff is unlikely to be held liable under state or federal law for any injury or death of an inmate that results solely from transporting an inmate to an in-state medical facility instead of an out-of-state facility. Ultimately, however, any determination of liability will turn on the specific facts of the situation. Finally, while no provision of the Oklahoma Constitution prevents the Legislature from enacting a statute to allow a sheriff to transport an inmate across state lines for medical treatment, the statute will have limited effect without an agreement with any state to which the inmate is transported.

II.

BACKGROUND

¶2 Oklahoma law mandates that "[e]very county, by authority of the board of county commissioners and at the expense of the county, shall have a jail or access to a jail in another county for the safekeeping of prisoners lawfully committed." 57 O.S.2021, § 41 The county sheriff has "the charge and custody of the jail of his county, and all the prisoners in the same[.]" 19 O.S.2021, § 513See also 57 O.S.Supp.2025, § 47

¶3 Under both Oklahoma law and federal law, a county sheriff's custodial responsibility for jail inmates includes providing for inmates' medical care. HCA Health Servs. of Oklahoma, Inc. v. Whetsel, 2007 OK 101173 P.3d 120357 O.S.Supp.2025, § 5274 O.S.Supp.2025, §§ 192Id. § 192.8(A). The Act also provides that "[t]he movement of inmates from one location to another shall be controlled and supervised by staff" and "[s]taff shall provide twenty-four hour supervision of inmates." Id. § 192.6. And finally, the Department of Health requires each jail to have a plan for providing around-the-clock emergency medical and dental care, including arrangements for the following:

(A) The use of one (1) or more hospital emergency rooms or other appropriate health care facility;

(B) The use of an emergency medical vehicle; and

(C) An emergency on-call physician and dentist when the emergency health care facility is not located in a nearby community.

¶4 OKLA. ADMIN. CODE § 310:670-5-8(5). Therefore, every jail in Oklahoma should have an established plan in place to ensure inmates have appropriate access to emergency medical care.

¶5 Under federal law, governments have a constitutional duty to provide medical care to persons they incarcerate. Estelle v. Gamble, 429 U.S. 97, 103-04 (1976); see also HCA Health Servs., 2007 OK 101see, e.g., Sealock v. Colorado, 218 F.3d 1205, 1210-11 (10th Cir. 2000), and from various provisions of Oklahoma law. See, e.g., 57 O.S.2021, § 38.319 O.S.2021, § 746

¶6 Given the custodial responsibilities of sheriffs over inmates in the county jail, you ask the following: What if an inmate needs emergency medical attention that cannot be provided inside the jail, and the closest appropriate medical facility is across the state line?

III.

DISCUSSION

A. Because a county sheriff does not have custodial authority over an inmate outside of Oklahoma, he or she cannot transport an inmate to another state for medical treatment.

¶7 Your first question turns on the extent of a sheriff's authority outside of Oklahoma. After all, as outlined above, a sheriff's custodial authority over inmates derives from Oklahoma law, and the general rule in Oklahoma (and elsewhere) See, e.g., Staller v. State, 1996 OK CR 48932 P.2d 1136See Graham v. State, 1977 OK CR 1560 P.2d 200U.S. v. Braggs, 189 F.2d 367 (10th Cir. 1951)). Additionally, by statute, peace officersSee 21 O.S.2021, § 99a19 O.S.Supp.2024, § 547See 21 O.S.2021, § 99a19 O.S.Supp.2024, § 547

¶8 For an Oklahoma sheriff's authority to be recognized in a neighboring state, that neighboring state must consent. This is the structure for several interstate agreements whereby states allow out-of-state officers to exercise certain powers and duties within that state. These include, for instance, the Uniform Act on Fresh Pursuit, 22 O.S.2021, §§ 22157 O.S.2021, §§ 60122 O.S.2021, §§ 728

¶9 Based on this lack of out-of-state jurisdiction, and without an agreement already in place with the other state, a sheriff seeking to transport an inmate across state lines for medical care would likely have to follow a cumbersome process of coordinating in real time with the neighboring state's law enforcement agencies for inmate transfer. This is illustrated in a 1991 Wisconsin Attorney General Opinion that addressed the same question. See 80 Wis. Op. Atty. Gen. 41, 1991 WL 628376 (Apr. 10, 1991). While that opinion concluded that Wisconsin law enforcement could transport an inmate to Minnesota for emergency medical treatment, doing so would require (1) Minnesota officers taking custody of the inmate at the state line, and (2) formal extradition procedures to return the inmate to Wisconsin. In theory, a similar process could be utilized here, but, as the Wisconsin Attorney General acknowledged, such time-consuming formalities would present substantial practical impediments in emergency situations. Based on the foregoing, and subject to the discussion in Section III.C below, county sheriffs' jurisdiction ends at the state line. Therefore, the sheriff lacks custodial authority to transport inmates to a neighboring state for medical care. 

B. A sheriff who transports an inmate to an in-state medical facility for treatment, despite an out-of-state facility being closer to the county jail, has numerous liability protections for injury or death of that inmate. 

¶10 You also inquired about potential liability for a sheriff who transports an inmate to an in-state facility for medical treatment despite an out-of-state facility being closer. As noted in your request, this question involves analysis of the Oklahoma Government Tort Claims Act ("GTCA"), 51 O.S.2021 & Supp.2025, §§ 151--171, for state law claims, and 42 U.S.C. § 1983 for federal claims. Analysis of either type of claim is necessarily limited in the context of an Attorney General Opinion, as findings of liability under either state or federal law will be fact-dependent. Nevertheless, the broad legal framework that applies to each is described below.

i. State Governmental Tort Claims Act Protections.

¶11 Through the GTCA, the State of Oklahoma has "adopt[ed] the doctrine of sovereign immunity" whereby "[t]he state, its political subdivisions, and all of their employees acting within the scope of their employment, whether performing governmental or proprietary functions, shall be immune from liability for torts." 51 O.S.2021, § 152.1(A). Id. § 152.1(B).

With respect to counties, the GTCA provides a specific exemption from liability related to the operation and maintenance of jail facilities. 51 O.S.Supp.2022, § 155Redding v. State, 1994 OK 102882 P.2d 61Id. ¶ 2, 882 P.2d at 62. 

ii. Federal Constitutional Claims and Qualified Immunity.

¶12 While the GTCA may bar state law negligence claims, it does not preclude federal constitutional claims under 42 U.S.C. § 1983. Under federal law, a sheriff acting with "deliberate indifference" to an inmate's serious medical needs faces potential liability for violating the Eighth Amendment (for sentenced inmates) or the Fourteenth Amendment's Due Process Clause (for pretrial detainees). Paugh v. Uintah County, 47 F.4th 1139, 1153-54 (10th Cir. 2022). In broad terms, "deliberate indifference entails something more than mere negligence . . . [but] something less than acts or omissions for the very purpose of causing harm or with knowledge that harm will result." Farmer v. Brennan, 511 U.S. 825, 835 (1994). The Supreme Court has equated deliberate indifference to recklessness, in which "a person disregards a risk of harm of which he is aware." Id.; see also Verdecia v. Adams, 327 F.3d 1171, 1175 (10th Cir. 2003). Using this standard, the Tenth Circuit has stated that, depending on the circumstances, "a jail official's delay or refusal to obtain medical care for an inmate may constitute deliberate indifference." Paugh, 47 F.4th at 1154. 

¶13 As cautioned at the outset, determining whether a sheriff's acts or omissions amount to deliberate indifference requires a fact-intensive inquiry that considers the totality of circumstances. See Rachel v. Troutt, 820 F.3d 390, 394 (10th Cir. 2016). As a result, this office cannot say with certainty that any particular set of circumstances rises (or does not rise) to that level. Nevertheless, Tenth Circuit precedents provide some guidance. For example, in Sealock v. Colorado, the court found deliberate indifference where a prison official delayed transporting an inmate complaining of potential heart attack to a hospital because "it was snowing outside and it would take time to warm up the prison van[.]" 218 F.3d at 1210. In Paugh v. Uinta County, the court reviewed several of its recent cases finding that prison officials, having failed to act despite obvious signs that medical attention was necessary, exhibited deliberate indifference. 47 F.4th at 1158.

¶14 By contrast, you ask whether a single fact--a sheriff opting to transport an inmate needing medical attention to an in-state hospital instead of a closer and/or better-equipped out-of-state hospital--would result in liability. Based on this office's review of the precedents, and assuming the sheriff acts promptly and reasonably in all other respects, it is exceedingly unlikely that the sheriff in such a situation would be held to have acted with "deliberate indifference" to the inmate's medical needs. Indeed, in light of this office's conclusion that a sheriff lacks the authority to transport an inmate across state lines for medical treatment, transport to the closest in-state hospital is the sheriff's only option. 

C. There is no Constitutional impediment to the Legislature enacting a statute allowing a sheriff to transport an inmate to an out-of-state medical facility.

¶15 Generally speaking, nothing in the Oklahoma Constitution prevents the Legislature from enacting legislation to permit county sheriffs to transport inmates to adjoining states for medical care. However, this broad conclusion is subject to two important caveats. First, article II, section 29 of the Oklahoma Constitution provides, in part, that no person "shall . . . be transported out of the State for any purpose without his consent, except by due process of law[.]" OKLA. CONST. art II, § 29. Cases interpreting section 29 have not focused on this passage specifically, but its plain language suggests that a sheriff must first obtain an inmate's consent before transporting that inmate across state lines for medical care. If the inmate were medically unable to provide such consent, the sheriff might be limited to in-state medical facilities, even if crossing state lines for medical care were statutorily permitted. 

¶16 A second caveat arises not from the Oklahoma Constitution, but from the issue discussed in Section III.A, above: Regardless of legislative action taken in Oklahoma, Oklahoma law is effective only within the state's borders. So even if the Legislature were to enact a law allowing out-of-state transport of inmates for medical care, the sheriff's custodial authority over that inmate ends when the sheriff leaves the state. States have solved this problem in other contexts through the adoption of uniform laws as described in Section III.A. But without this type of consent from the neighboring state, an Oklahoma law giving a sheriff authority to take inmates across state lines does not extend the sheriff's custodial authority beyond the border.

Finally, while not specifically part of your question, an Oklahoma statute already permits public agencies, including counties, to enter into interlocal cooperation agreements with other public agencies, even those in other states, that would potentially allow sheriffs to maintain custodial authority of inmates in neighboring states. See 74 O.S.2021, § 1001

Any power or powers, privileges or authority exercised or capable of exercise by a public agency of this state may be exercised and enjoyed jointly with any other public agency of this state, and jointly with any public agency of any other state or of the United States to the extent that laws of such other state or of the United States permit such joint exercise or enjoyment.

¶17 Id. § 1004(A) (emphasis added). While any interlocal agreement would have to meet statutory requirements and obtain the needed approvals, it appears that an Oklahoma county could enter into an interlocal agreement with another state, or a county within that state, which would allow for the transport of an inmate into the other state in order to seek medical treatment. However, whether any particular interlocal cooperation agreement is sufficient to achieve that goal is beyond the scope of this Opinion.

¶18 It is, therefore, the official Opinion of the Attorney General that: 

1. Because a county sheriff's custodial authority over a jail inmate does not extend outside of Oklahoma, a sheriff cannot transport an inmate across state lines for medical treatment even if the closest appropriate medical facility to treat the inmate's condition is in another state.

2. a. The Governmental Tort Claims Act specifically exempts sheriffs from liability arising out of the operation of jails, which includes medical care provided to inmates. Redding v. State, , . While ultimate liability depends on specific facts that are beyond the scope of this Opinion, a sheriff who transports an inmate to an in-state medical facility for treatment, despite a comparably equipped out-of-state facility being closer to the county jail, without more, would be exempt from state tort liability for injury or death that results from taking the inmate to the in-state facility.

b. Similarly, a sheriff's liability under 42 U.S.C. § 1983 in the same scenario is necessarily fact-dependent. However, under federal case law it is unlikely that the sheriff will meet the "deliberate indifference" standard required for liability based solely on the decision to transport an inmate to an in-state medical facility instead of a comparable but closer out-of-state facility.

3. There is nothing prohibiting the Oklahoma Legislature from enacting a statute to allow a sheriff to transport jail inmates across state lines for medical care. For such a statute to be effective, however, the inmate would have to consent to the transport as required by OKLA. CONST. art II, § 29, and there would need to be an agreement with the other state to extend the sheriff's custodial authority beyond the Oklahoma border.

GENTNER DRUMMOND
ATTORNEY GENERAL OF OKLAHOMA

CHERYL DIXON
DEPUTY GENERAL COUNSEL

FOOTNOTES

1 See 70 AM. JUR. 2D Sheriffs, Police, and Constables § 37 (Nov. 2025 update).

21 O.S.2021, § 99

See Ark. Op. Atty. Gen. No. 95-407, 1996 WL 41808 (Jan. 25, 1996). However, the opinion addresses law enforcement's jurisdictional limitations only by brief reference to In re Maney, 55 P. 930

51 O.S.Supp.2025, § 152see also Tuffy's, Inc. v. City of Oklahoma City, 2009 OK 4212 P.3d 1158

51 O.S.Supp.2022, § 155

Paugh, 47 F.4th at 1153. A right is clearly established when a Supreme Court or Tenth Circuit decision is directly on point, "or the clearly established weight of authority from other courts have found the law to be as the plaintiff maintains." Id. at 1167. Although the Supreme Court has held that delaying or refusing medical care may constitute deliberate indifference, Estelle v. Gamble, 429 U.S. 97, 104--05 (1976), there is no clearly established authority addressing whether a sheriff must transport an inmate across a state line to obtain medical treatment.