**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

**December 22, 2023**

**Christopher M. Wolpert**
**Clerk of Court**

_____

PETER GEORGE NOE,

    Plaintiff - Appellant,

v.

UNITED STATES GOVERNMENT;
BERKLEY, Dr.; H. SCHOUWEILER;
FEDERAL BUREAU OF PRISONS;
DUNN, R.N.; FELLOWS, R.N.,

    Defendants - Appellees.

No. 23-1025
(D.C. No. 1:21-CV-01589-CNS-STV)
(D. Colo.)

_____

**ORDER AND JUDGMENT***

_____

Before **EID**, **CARSON**, and **ROSSMAN**, Circuit Judges.

_____

Peter George Noe, pro se, appeals the district court's judgment dismissing

claims he raised concerning dental care he received from prison staff. Exercising

jurisdiction under 28 U.S.C. § 1291, we affirm.

_____

    * After examining the briefs and appellate record, this panel has determined
unanimously that oral argument would not materially assist in the determination of
this appeal. *See* Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G). The case is therefore
ordered submitted without oral argument. This order and judgment is not binding
precedent, except under the doctrines of law of the case, res judicata, and collateral
estoppel. It may be cited, however, for its persuasive value consistent with
Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

## I.  BACKGROUND

Noe is a federal prisoner housed at the United States Penitentiary Administrative Maximum Facility in Florence, Colorado.  He filed a pro se action against the United States, the Bureau of Prisons (BOP), and four individual BOP employees in their individual capacities:  a dentist (defendant Burkley), a dental assistant (defendant Schouweiler), and two nurses (defendants Dunn and Fellows).  In the operative amended complaint, Noe alleged that at a November 2019 visit with Dr. Burkley, he complained of substantial pain in three teeth.[1]  Dr. Burkley told Noe that the three teeth needed crowns, but because prison policy did not allow crowns due to the expense, Dr. Burkley planned to use fillings.  Dr. Burkley then put a filling in one of those teeth ("tooth #3") and declined to treat the other two teeth because of a one-tooth-per-visit policy.  When Noe complained that tooth #3 was worse, Dr. Burkley tried another filling.  And when that did not work, Dr. Burkley tried a pin and a filling.  The third procedure, which occurred in June 2020, broke tooth #3, which then had to be extracted.  Noe received fillings in the other two teeth in November 2020 and April 2021.  During the eighteen months between Noe's initial visit and the last repair, he was in substantial pain and was denied pain medication.  The teeth continue to cause him substantial pain.

Noe asserted three claims:  (1) Eighth Amendment deliberate indifference against the individual defendants under *Bivens v. Six Unknown Named Agents of*

---

[1] Noe also complained about two other teeth, but treatment with respect to them is not at issue in this appeal.

*Federal Bureau of Narcotics*, 403 U.S. 388 (1971); (2) a claim under the Federal Tort Claims Act (FTCA) against the United States; and (3) a claim for injunctive relief against the BOP based on the no-crowns policy. He sought declarations that defendants were liable on each claim, damages on claims one and two, and injunctive relief on claim three.

Noe sought and received multiple extensions of time to file a certificate of review for his FTCA claim, but he never filed one.[2] Defendants eventually filed motions to dismiss. In December 2022, the magistrate judge recommended: (1) dismissing the *Bivens* claim as not cognizable under applicable precedent, because the BOP's Administrative Remedy Program provided an alternative remedy Noe could have used to obtain relief; (2) dismissing the FTCA claim because Noe failed to obtain a certificate of review; and (3) dismissing the claim for injunctive relief because any "no crowns" policy did not violate the Eighth Amendment, but with leave to amend the claim to add allegations that might show such a policy amounted to an Eighth Amendment violation.

Noe filed objections, which included factual allegations supporting the claim for injunctive relief against the BOP that the magistrate judge had outlined. The district court overruled the objections, adopted the recommendation, and granted the

---

[2] As we later explain more fully, a certificate of review is required under Colorado law to show that a plaintiff has consulted an expert who has concluded that the plaintiff's claims do not lack substantial justification. *See* Colo. Rev. Stat. § 13-20-602(1)(b)(3)(a)(I)–(II).

motions to dismiss.  However, the court allowed Noe fourteen days to file an amended complaint limited to the claim for injunctive relief against the BOP.

Noe never filed an amended complaint.  Instead, he filed a notice of appeal on January 30, 2023.

## II.  APPELLATE JURISDICTION

Defendants filed a motion to dismiss this appeal for lack of jurisdiction, arguing that the district court's order granting their motions to dismiss was not a final, appealable order.  However, Noe has since filed a motion in the district court stating he did not intend to file an amended complaint and asking for a final judgment.  On May 9, 2023, the district court entered a final judgment.  Noe's notice of appeal, therefore, "is treated as filed on the date of and after the entry" of the final judgment, Fed. R. App. P. 4(a)(2).  The notice of appeal is therefore timely and confers appellate jurisdiction on this court.  Consequently, we deny as moot defendants' motion to dismiss and two related motions Noe filed ("Motion to Voluntarily Dismiss Motions" and "Motion for Clarification").

## III.  DISCUSSION

Noe raises five issues on appeal, which we address in the following order: (1) his *Bivens* claim is cognizable; (2) the district court should have allowed him to amend his complaint to cite certain statutes; (3) the district court abused its discretion in finding an expert was needed for his FTCA claim; (4) the district court should have granted him a fourth extension of time to file a certificate of review for his FTCA claim; and (5) the district court erred in denying his motion to appoint an

4

expert. Liberally construing Noe's pro se filings, but without acting as his advocate, *see Yang v. Archuleta*, 525 F.3d 925, 927 n.1 (10th Cir. 2008), we reject these arguments.

## A. *Bivens* claim

In *Bivens*, the Supreme Court "authorized a damages action against federal officials for alleged violations of the Fourth Amendment." *Egbert v. Boule*, 596 U.S. 482, 486 (2022). Since then, the Supreme Court has only twice "fashioned new causes of action under the Constitution." *Id.* at 490. In *Davis v. Passman*, 442 U.S. 228 (1979), the Court recognized a damages action for a former congressional staffer's Fifth Amendment sex-discrimination claim. And in *Carlson v. Green*, 446 U.S. 14 (1980), the Court implied a damages action for a federal prisoner's inadequate-care claim under the Eighth Amendment.

However, the Supreme Court has since "emphasized that recognizing a cause of action under *Bivens* is a disfavored judicial activity." *Egbert*, 596 U.S. at 491 (internal quotation marks omitted). Accordingly, the Court eventually settled on a two-step analysis of proposed *Bivens* claims. At step one, a court has to consider "whether the case presents 'a new *Bivens* context'—*i.e.*, is it 'meaningfully' different from the three cases in which the [Supreme] Court has implied a damages action." *Id.* at 492 (brackets omitted) (quoting *Ziglar v. Abbasi*, 582 U.S. 120, 139 (2017)). And at step two, "if a claim arises in a new context, a *Bivens* remedy is unavailable if there are 'special factors' indicating that the Judiciary is at least arguably less

5

equipped than Congress to 'weigh the costs and benefits of allowing a damages action to proceed.'" *Id.* (quoting *Abbasi*, 582 U.S. at 136).

Noe argues that his *Bivens* claim is cognizable because the factual context of his case is like the factual context in *Carlson*, and factual similarity is sufficient to permit a *Bivens* claims to proceed regardless of whether a plaintiff has a meaningful alternative remedy. Noe also argues that the BOP's Administrative Remedy Program (ARP) is not a meaningful alternative to a civil action. Because the district court dismissed the *Bivens* claim with prejudice for failure to state a claim for relief, our review is de novo. *See Albers v. Bd. of Cnty. Comm'rs*, 771 F.3d 697, 700 (10th Cir. 2014).

We need not decide whether Noe's case is meaningfully different from *Carlson*, because in the wake of *Egbert* and *Silva v. United States*, 45 F.4th 1134 (10th Cir. 2022), the availability of the ARP is sufficient to foreclose a *Bivens* claim despite any factual similarity between the two. In *Silva*, we observed that *Egbert* "appeared to alter the existing two-step *Bivens* framework by stating that 'those steps often resolve to a single question: whether there is any reason to think that Congress might be better equipped to create a damages remedy.'" 45 F.4th at 1139 (quoting *Egbert*, 596 U.S. at 492). And we viewed "the key takeaway from *Egbert*" as being "that courts may dispose of *Bivens* claims for 'two *independent* reasons: Congress is better positioned to create remedies in the [context considered by the court], and the Government already has provided alternative remedies that protect plaintiffs.'" 45 F.4th at 1141 (quoting *Egbert*, 596 U.S. at 494) (emphasis and brackets in *Silva*).

6

We concluded that, in light of Supreme Court precedent, "the [ARP] is an adequate 'means through which allegedly unconstitutional actions can be brought to the attention of the BOP and prevented from recurring.'" *Id.* (ellipsis omitted) (quoting *Corr. Servs. Corp. v. Malesko*, 534 U.S. 61, 74 (2001)). And "'[b]ecause *Bivens* is concerned solely with deterring the unconstitutional acts of individual officers,'" we determined that "the availability of the [ARP] offers an independently sufficient ground to foreclose [a] *Bivens* claim" brought by a federal prisoner. *Id.* (quoting *Egbert*, 596 U.S. at 498).[3]

Read together, *Egbert* and *Silva* direct that where the government has provided an alternative remedy, a court generally should not recognize a *Bivens* claim even if the factual context is not meaningfully different from that in *Bivens*, *Davis*, or *Carlson*. And here, the ARP, which *Silva* says is an adequate alternative remedy, is available to Noe. Thus, Noe's *Bivens* claim is, as the district court concluded, not cognizable.

As Noe points out, at least one district court (outside the Tenth Circuit) has said that if the context is not meaningfully different from *Bivens*, *Davis*, or *Passman*, the analysis ends there, and the *Bivens* claims can proceed without the step-two

---

[3] In *Silva*, we noted that *Egbert* did not overrule *Abbasi* and that there was some tension between *Abbasi*'s two-step approach and *Egbert*'s apparent collapsing of those two steps into one. *See* 45 F.4th at 1139 & n.4. But we "decline[d] to address or resolve any [such] tension . . . because it [was] not necessary to dispose of the appeal before us." *Id.* Likewise, here, we may decide this appeal without resolving any tension between *Abbasi* and *Egbert* given our reliance on *Silva*'s interpretation of *Egbert*.

inquiry into whether an adequate alternative remedy exists.  *See Kennedy v. Massachusetts*, 643 F. Supp. 3d 253, 259 (D. Mass. 2022) ("[B]ecause this court is not fashioning a new *Bivens* context, the Court need not consider alternative remedial structures.").[4]  But precedential decisions of this court bind later panels unless there has been "en banc reconsideration or a superseding contrary decision of the U.S. Supreme Court."  *United States v. Ensminger*, 174 F.3d 1143, 1147 (10th Cir. 1999) (internal quotation marks omitted).  Because neither of those conditions is satisfied, we are bound by *Silva*'s interpretation of *Egbert*.

## B.  Amendment of complaint

A day before the district court entered its order adopting the magistrate judge's recommendation and granting the motions to dismiss, Noe filed a motion to amend his complaint to add citations to 5 U.S.C. § 702, which is a provision in the Administrative Procedures Act (APA), and to 28 U.S.C. §§ 2201 and 2202, which concern declaratory judgments.[5]  The district court struck Noe's motion.  Noe claims

---

[4] Noe relies on another case taking the same approach, *Ibuado v. Federal Prison Atwater*, No. 1:22-cv-00651, 2022 WL 16811880, at *4 (E.D. Cal. Nov. 8, 2022) (unpublished), but that decision—a magistrate judge's recommendation—was vacated by the magistrate judge before the district court ever ruled on it, *see* 2023 WL 159568, at *1 (E.D. Cal. Jan. 11th, 2023) (unpublished).

[5] In relevant part, § 702 provides:  "A person suffering legal wrong because of agency action, or adversely affected or aggrieved by agency action within the meaning of a relevant statute, is entitled to judicial review thereof."  With some exceptions not relevant here, § 2201 permits a federal court, "[i]n a case of actual controversy within its jurisdiction," to "declare the rights and other legal relations of any interested party seeking such declaration."  And § 2202 allows a court to grant "[f]urther necessary or proper relief based on a declaratory judgment or decree."

that citing these statutes, in conjunction with his reliance on the federal-question jurisdictional grant found in 28 U.S.C. § 1331, would have saved his request for declaratory relief as to claims one (*Bivens*) and three (injunctive relief against the BOP).

Noe's appellate argument fails because §§ 1331, 2201, and 2202 do not create any substantive rights, *see Hanson v. Wyatt*, 552 F.3d 1148, 1157 (10th Cir. 2008), and citing them would not have remedied the deficiencies that led to dismissal of claims one or three. Noe also has not shown that relief under § 702 is available, either by virtue of another statute or because there is no other adequate judicial remedy. *See* 5 U.S.C. § 704 (limiting judicial review under the APA to challenges to "[a]gency action made reviewable by statute" and to "final agency action for which there is no other adequate remedy in court").

## C. Expert required for FTCA claim

Colorado's statutes pertaining to a certificate of review are "applicable to professional negligence claims brought against the United States under the FTCA." *Hill v. SmithKline Beecham Corp.*, 393 F.3d 1111, 1117 (10th Cir. 2004). Colorado Revised Statute § 13-20-602(1)(a) provides that a plaintiff has 60 days after service of a complaint seeking damages based on professional negligence of a licensed professional to file a certificate of review "unless the court determines that a longer period is necessary for good cause shown." The certificate of review certifies that the plaintiff's "attorney has consulted a person who has expertise in the area of the alleged negligent conduct" and that the person consulted has concluded that "the

9

claim . . . does not lack substantial justification." § 13-20-602(1)(b)(3)(a)(I)–(II). "[T]he requirements of the certificate of review statute are applicable to civil actions alleging negligence of licensed professionals filed by nonattorney pro se plaintiffs," *Yadon v. Southward*, 64 P.3d 909, 912 (Colo. App. 2002), where "expert testimony would be necessary to establish a prima facie case," Colo. Rev. Stat. § 13-20-601.

In the district court, Noe repeatedly asserted that an expert was required for his FTCA claim, and he sought and received three extensions of time to file a certificate of review. Not until his response to the United States' motion to dismiss—and after the district court denied his fourth request for an extension of time to file a certificate of review—did he argue that an expert was not necessary because the inadequacy of the treatment he received was self-evident: Dr. Burkley prescribed a crown for tooth #3, he did not provide a crown due to a "no crowns" policy, Noe was left in extreme pain for six months, and Noe lost the tooth. The district court rejected this argument and concluded that an expert was required. It then premised dismissal of the FTCA claim on Noe's failure to provide a certificate of review.

On appeal, Noe repeats his argument that expert testimony was unnecessary. We review a district court's determination regarding the need for expert testimony for an abuse of discretion. *See Shelton v. Penrose/St. Francis Healthcare Sys.*, 984 P.2d 623, 627, 629 (Colo. 1999).

The district court did not abuse its discretion in determining that expert testimony was necessary. Under Colorado law, "the standard of care for medical malpractice is an objective one." *Day v. Johnson*, 255 P.3d 1064, 1069 (Colo. 2011).

10

Thus, Dr. Burkley's subjective opinion that tooth #3 required a crown, coupled with the ultimate failure of alternative treatment, does not, by itself, relieve Noe of the requirement to provide a certificate of review. Instead, an expert was required to evaluate, as an objective matter, whether Dr. Burkley's alternative treatment fell outside the relevant standard of care. The answer to that question does not "lie[] within the ambit of common knowledge or experience of ordinary persons," and therefore Noe had to "establish the controlling standard of care, as well as [Dr. Burkley's] failure to adhere to that standard, by expert opinion testimony." *Melville v. Southward*, 791 P.2d 383, 387 (Colo. 1990).

In contrast, to submit a case of professional negligence "to a jury on a theory of res ipsa loquitur," which is the theory implicit in Noe's argument that an expert is unnecessary, "circumstantial evidence must be such that it is more likely than not that the event was caused by negligence." *Shelton*, 984 P.2d at 627. "The doctrine applies where the cause of injury is so apparent that a lay person is as able as an expert to conclude that such things do not happen in the absence of negligence." *Williams v. Boyle*, 72 P.3d 392, 398 (Colo. App. 2003). "It is only in unusual circumstances that a medical malpractice claim can be proven without the presentation of expert medical opinion to establish the proper standard of care against which the professional's conduct is to be measured." *Shelton*, 984 P.2d at 627.

Noe's case does not present unusual circumstances, nor would a lay person be as able as an expert to conclude that Noe would have lost the tooth but for Dr. Burkley's alleged negligence. The circumstantial evidence only shows

11

Dr. Burkley's subjective opinion that a crown was necessary and that the extensive, alternative treatment he provided ultimately did not work. It is insufficient to show, on its own, that the alternative treatment amounted to negligence, and it is difficult to see how it could show negligence absent expert testimony regarding the standard of care. We therefore conclude that the district court did not abuse its discretion in determining that Noe required expert testimony to establish a prima facie case for his FTCA claim.

### D.  Extension of time to file certificate of review

Noe sought counsel to help him obtain a certificate of review. The magistrate judge granted that request, but warned Noe that there was no guarantee that any attorney on the court's pro-bono panel would represent him. Noe never found counsel willing to represent him. And as noted, Noe sought and obtained three extensions of time to file the certificate of review, variously relying on the prison's mail/communications policy and defendants' failure to provide him with copies of his dental x-rays or other medical records. As set out in a memorandum from the warden that Noe repeatedly submitted to the court, the communications policy permitted Noe to communicate only with people on his approved contact list, warned that approved contacts could not circumvent that limitation by forwarding communications or funds, and prohibited contacting anyone through a third party. However, defendants presented an affidavit from a staff lieutenant stating that Noe could communicate with members of the public, including medical professionals, provided the communications did not otherwise violate BOP policies.

The three extensions moved the deadline from approximately December 2021 to September 26, 2022.  In granting the third extension, the magistrate judge warned that no further extensions would be granted.  As the September deadline approached, Noe sought another extension, asserting that defendants still would not provide him with film of his x-rays (they provided only a paper copy that, according to Noe, did not show the pin that had been put into tooth #3) and that prison policy precluded him from contacting an expert on his own.  The district court summarily denied the motion, directing Noe to its previous order upholding the magistrate judge's denial of Noe's motion for an indefinite stay but granting the final extension.  In the previous order, the court determined that an indefinite stay would not advance the purpose of the certificate-of-review requirement (to weed out frivolous claims by pro se litigants); Noe had not explained why a paper copy of his x-rays was unsatisfactory; and because Noe's prior requests for extensions of time "were based on the same communication restrictions," the magistrate judge did not err in denying "any further extension due to the same alleged issue."  Suppl. R. at 105.  The court also concluded more generally that despite any restrictions on third-party communications, Noe had had enough time to obtain a certificate of review.

On appeal, Noe's argument, although verbose, is that it was unfair to dismiss the FTCA claim on the ground that he failed to obtain a certificate of review when the causes of that failure were the prison's communications policies and defendants' refusal to provide the required medical records.  He says that instead, the district court should have granted his fourth motion for an extension of time.  Reviewing for

13

an abuse of discretion, *see Rachel v. Troutt*, 820 F.3d 390, 394 (10th Cir. 2016), we see none.

Our resolution of this issue turns on evidence in the record that, despite the alleged limitation in the Warden's memo that Noe can only communicate with those on his approved contact list, he was able to ask for representation from the University of Denver Sturm College of Law's Civil Rights Clinic, *see* Suppl. R. at 20–21 (rejection letter dated October 27, 2021), and at least four law firms, *see id.* at 22 (undated rejection letter from Covington & Burling); *id.* at 83 (rejection letter from Law Offices of Dianne Sawaya dated June 30, 2022); *id.* at 84 (rejection letter from Killmer, Lane & Newman dated June 17, 2022); *id.* at 85 (rejection letter from Wahlberg, Woodruff, Nimmo & Sloane dated May 2, 2022). Noe has not claimed that the DU law clinic or any of the firms were on his approved contact list, or that he was disciplined for contacting them. Thus, the evidence supports that Noe could communicate directly with members of the public.

But even if, for example, Noe had to get a medical professional on his approved contact list and doing so took as long as he now says it does (four to six months), he had almost eleven months to do so—from October 29, 2021, when he first served defendants, to September 26, 2022, the final deadline the court set to submit the certificate. Moreover, in another case he filed, which the district court discussed (the same magistrate judge was assigned to that case), he was able to get a certificate of review from his aunt, who is a nurse and, apparently, on his approved contact list. He fails to explain why she could not have helped him identify a dentist

14

who could have reviewed his treatment and whom Noe could have tried to put on his approved contact list.[6] And without any showing that he had an expert who could review his medical records, it is irrelevant whether prison officials refused to give him film of his x-rays or any other medical records. In sum, the district court gave Noe a generous amount of time to find an expert and submit the certificate of review. Under the circumstances, it was not an abuse of discretion for the court to refuse to give him more time.

### E. Denial of motion to appoint expert

In August 2022, Noe filed a motion asking the district court to appoint an expert under Federal Rule of Evidence 706(a) to complete the certificate of review.[7] The magistrate judge held a hearing on the motion and denied it in a minute order for reasons given at the hearing (there is no transcript of the hearing). Noe filed objections, which the district court overruled. The court gave two alternative reasons for upholding the magistrate judge's ruling. First, the court found that Noe's

---

[6] As mentioned in the next subpart of our decision, the magistrate judge determined at a hearing on Noe's motion to appoint an expert that he could have asked family and friends on his approved contact list to solicit experts to complete the certificate.

[7] Rule 706(a) provides:

On a party's motion or on its own, the court may order the parties to show cause why expert witnesses should not be appointed and may ask the parties to submit nominations. The court may appoint any expert that the parties agree on and any of its own choosing. But the court may only appoint someone who consents to act.

argument that prison policy prevents him from communicating with anyone not on his approved contact list was inconsistent with evidence that he was able to correspond with various law firms in 2022 and with the lieutenant's declaration. The court also observed that at the hearing on the motion, the magistrate judge noted that Noe could contact family and friends on his approved contact list and ask them to solicit experts for the certificate of review. Second, the court determined that Rule 706(a)'s purpose is to appoint an expert to assist the court, not the parties.

We review the denial of a motion to appoint an expert under Rule 706(a) for an abuse of discretion. *Rachel*, 820 F.3d at 397.

Noe argues that the district court abused its discretion by refusing to appoint an expert on the ground that BOP policy does not prevent him from contacting third parties. He argues he presented evidence that prison officials reject mail sent to him by third parties "all the time." Aplt. Br. at 19.

Noe's argument completely overlooks the district court's alternative reason for denying his motion—that Rule 706(a) allows the court to appoint an expert to assist the court, not the parties.[8] Noe's failure to challenge this alternative reason for

---

[8] In support of that rationale, the district court relied on *McCleland v. Raemisch*, No. 20-1390, 2021 WL 4469947 (10th Cir. Sept. 30, 2021) (unpublished). In *McCleland*, a panel of this court determined that "[t]he details of Rule 706 make clear that an appointed expert's role is to assist the court, not the parties." *Id.* at *4. The panel pointed out that "'[t]he court [*i.e.*, not a party] must inform the expert of the expert's duties.'" *Id.* (quoting Fed. R. Evid. 706(b)) (second set of brackets in *McCleland*). The panel also observed that under Rule 706, "'[t]he expert must advise the parties of any findings the expert makes'" and "'may be deposed by any party.'" *Id.* (quoting Fed. R. Evid. 706(b)(1)–(2)) (ellipsis omitted). And the panel recognized that Rule 706 "'does not limit a party in calling its own experts.'"

denying his motion is fatal to his success on this issue: "[W]here a district court's disposition rests on alternative and adequate grounds, a party who, in challenging that disposition, only argues that one alternative is erroneous necessarily loses because the second alternative stands as an independent and adequate basis, regardless of the correctness of the first alternative." *Shook v. Bd. of Cnty. Comm'rs*, 543 F.3d 597, 613 n.7 (10th Cir. 2008).

## IV.  CONCLUSION

We affirm the district court's judgment.  We grant Noe's motion to proceed on appeal without prepayment of costs and fees.  We deny Noe's motion to appoint counsel.  We deny as moot Appellees' Motion to Dismiss For Lack of Appellate Jurisdiction, Noe's Motion to Voluntarily Dismiss Motions, and Noe's Motion for Clarification.

Entered for the Court


Allison H. Eid
Circuit Judge

---

*Id.* (quoting Fed. R. Evid. 706(e)).  Thus, the panel concluded that "Rule 706 was not designed to fill in the gaps for a party who cannot find or afford an expert."  *Id.* at *5.